## POLLARD ET AL. *vs.* MADDOX.

[TRESPASS QUARE CLAUSUM FREGIT TO RECOVER DAMAGES FOR OPENING RAIL-
ROAD THROUGH PLAINTIFF'S LANDS.]

1. *Right of way assignable by railroad company.*—The Montgomery Railroad Company having made an assignment of its road and all its effects, which was held valid by this court in Allen v. Montgomery Railroad Co., 11 Ala. 437, the purchasers at the trustees' sale, who were afterwards incorporated under a new name, acquired and succeeded to all the rights which the old company had under a deed conveying the right of way for the construction of the road.

2. *Contracts construed by aid of surrounding circumstances.*—In the construction of a written contract, the court must place itself in the situation of the contracting parties at the time of its execution, and look at the occasion which gave rise to it, the relative position of the parties, and their obvious design as to the objects to be accomplished; but if the meaning and intention of the parties cannot be ascertained from the language of the instrument, when thus illustrated, it is void for uncertainty.

3. *Uncertainty in deed.*—The owners of lands through which a railroad, then in process of construction, would probably pass, joined in a sealed instrument, by which, in consideration of one dollar in hand paid, they bargained, sold and conveyed to the railroad company, in present words, "so much of any part of our (their) lands as may be necessary in the construction of said railroad": *Held,* that the instrument, though it might not operate as a conveyance in-fee of the land necessary for the construction of the road, was not void for uncertainty, but was binding as a covenant that the company might appropriate so much of any part of the grantors' lands as might be necessary for the construction of the contemplated railroad.

4. *Estoppel under covenant and by acts in pais.*—The owner of lands through which a railroad passed, having previously granted the right of way to the company, was apprised when the agents of the company entered on his land to open the road, and knew that they claimed the right under his deed, but raised no objection, and took a contract for supplying the company with a portion of the materials used in the construction of the road : *Held,* that he was estopped from afterwards bringing trespass against the members of the company, although the instrument by which he conveyed the right of way might be inoperative as a deed.

APPEAL from the Circuit Court of Macon.

Tried before the Hon. ROBERT DOUGHERTY.

This action was brought by James Maddox, against the appellants, to recover damages for entering upon certain lands in Chambers county, cutting down the trees, digging

up the soil, &c. The defendants pleaded separately, in short by consent, not guilty, with leave to give in evidence any special matter in bar of the action. The plaintiff having died, the suit was revived in the name of his executrix, who is the present plaintiff. The bill of exceptions, which presents all the matters now assigned as error, shows that the defendants justified under a deed executed by said Maddox, with others, in 1835, conveying the right of way through his lands to the old Montgomery Railroad Company; but the court held this deed void for uncertainty. The opinion contains a full statement of all the material facts of the case.

HENRY C. SEMPLE, for the appellants:

The questions arising on the record are two : 1. Was not the deed of Maddox to the Montgomery Railroad Company a valid conveyance ? and, if so, could not that company convey to others ? 2. If the deed was not valid as a conveyance, still, does not the conduct of Maddox, in permitting the company to build their road on his land, under a claim of authority from him, without making any objection, but on the contrary assisting them, operate as a license to them to build their road on his land ?

1. A deed is always operative, if the court, by placing itself in the situation of the grantor at the time of its execution, with a knowledge of surrounding circumstances, and of the force and import of the words used, can ascertain his meaning from the language of the instrument thus illustrated.—1 Greenl. Ev. § 300, and cases cited; 4 Greenl. Cruise, 246, § 24. The fact of the dissolution of a corporation only operates a reversion to the grantor of the lands which then remain the property of the corporation.—Angell & Ames on Corporations, § 195; State v. Rives, 5 Iredell's Law R. 305-9.

2. A silent assent to a claim to land, by a permission to the party making it to erect valuable improvements, with a full knowledge that the claim is stated at the time to be derived from the owner, under an instrument which is susceptible of a construction as a conveyance or license, will operate as a new license to the party constructing the improvements. To hold otherwise, would operate a fraud on the party making the improvements.—1 Greenleaf's R. 117;

9 Johns. 35, and cases there cited for plaintiff in error. There appears to have been no revocation of the license until suit brought, and no act was done by the defendants without the sanction of the plaintiff's testator.

JAMES E. BELSER, *contra:*

1. There is no mutuality in the deed, and it is void for uncertainty. It does not state where the land lies, or in what county, or in what State. The title to land can only pass by deed.—McPherson v. Walters, 16 Ala. 715; Jubber v. Jubber, 9 Simons, 503; Jarman on Wills, vol. 1, pp. 318–19.

2. The license in the deed to use the land, is confined by its terms to the original railroad company; and the right arising out of the license did not pass by the mortgage sale, nor by the deed executed to the purchasers of the road.—Sampson v. Burnside, 13 N. H. 265; 3 Kent's Com. (2d ed.) 452.

3. If the deed was operative only as a license, the license was confined to the original company.—Bridges v. Purcell, 1 Dev. & Bat. Law R. 492.

4. The plaintiff was not estopped from a recovery by the facts shown in the record.—Watkins v. Peck, 13 N. H. 360; Ware v. Cowles, 24 Ala. 446; McPherson v. Walters, 16 ib. 716.

CHILTON, C. J.—It appears that the defendants, as the agents, and by direction of the Montgomery and West Point Railroad, a company incorporated by the legislature of this State, had constructed a portion of the road, say a mile and a quarter of it, which runs from Montgomery to West Point, upon the land of the plaintiff, (being the same described in his declaration,) using no more of the soil and timber than was necessary to the erection of said portion or section of said railroad. They justified under a deed executed by the testator and others, whereby, on the 10th November, 1835, after reciting, by way of preamble, that a railroad was about to be established from the town of Montgomery, Alabama, to West Point, or elsewhere on the Chattahoochee River, the said James Maddox of Chambers county, (with others whom it is unnecessary to name,) for and in consideration of one dollar in hand paid by the Montgomery Railroad Company,

" bargains, sells and conveys unto said company so much of any part of his land as shall be necessary in the construction of said road. In testimony whereof", &c. .

After the execution of this deed, and after the said road had been commenced, and a portion of it built, the Montgomery Railroad Company resolved to borrow fifty thousand dollars in money, upon bonds, at eight per cent., with interest payable semi-annually, and to execute a mortgage on all its property, real and personal, to secure their payment. This was done, and a mortgage was accordingly executed to Whiting, Taylor and Crommelin, on the 20th Nov., 1839.

On the 6th July, 1842, the trustees in the mortgage deed sold the property, and, by their deed of that date, conveyed said property to Charles T. Pollard and sundry others, the purchasers, in consideration of fifty thousand dollars paid by them, the said Pollard and his associates.

By certain acts of the legislature of this State, recognizing the sale and conveyance to Pollard and his associates, the name of the old corporation is changed, and Pollard and his co-purchasers are invested with all the powers pertaining to the old corporation, under the name of the Montgomery and West Point Railroad Company; they being required to perform certain conditions, which this record says they duly performed.

It appears, further, that James Maddox, the plaintiff, was fully apprised, when the agents of the Montgomery and West Point Railroad entered upon his land to construct the road, that they claimed this right by virtue of the deed from him and others above alluded to; that he raised no objections to their going on with the work, nor gainsayed their right to do so, but, on the contrary, he took a contract from the company to aid them in its construction over his land, by furnishing a large number of cross-ties.

The circuit judge was of opinion, and so instructed the jury, that the deed of Maddox to the company was void for uncertainty, for all purposes, and that said company took no right, interest, or privilege under it, although the defendants may have been fully authorized by the Montgomery and West Point Railroad Company to open said road. The judge further charged, that, although the plaintiff (James Maddox)

lived near the road on which the excavations and embankments were made on his land, while the same were being made, and afterwards furnished cross-ties to the Montgomery and West Point Railroad Company under a contract with said company, still this would not prevent the plaintiff from recovering. He refused to charge, that, if they believed the evidence, they should find for defendants. These rulings present the points for our revision.

That the Montgomery Railroad Company had power to make the mortgage or assignment to Whiting and others, was decided by this court in Allen v. The Montgomery Railroad Company, 11 Ala. Rep. 437. The legislature having conferred upon the company the power to pledge or mortgage its effects, track, &c., the right of the mortgagee to make the security available necessarily follows. But this right would be illusory and fruitless, unless the purchaser under a sale or foreclosure could reap the benefit of his purchase; which he could not do, unless he could reap the profits resulting from the use of the road which was purchased by him. It follows, therefore, that Pollard and his associates acquired all the right which the Montgomery Railroad Company could assign; the assignment, as we have said, covering every thing that belonged to it, whether real or personal. That the legislature invested them with certain privileges, incorporating them in and reforming the old corporation, or making them a new corporation with the powers of the old, makes no difference, as respects the question before us. They are a corporate body, and possess or succeed to the rights which the Montgomery Railroad had under the contract with the appellee's testator, if that right was assignable, or such as the law will uphold.

Contracts must be interpreted in the light of surrounding circumstances. The occasion which gives rise to them, the relative position of the parties, and their obvious design as to the objects to be accomplished, must be looked at, in order to arrive at their true meaning, and to enable the court to carry out their intention, if lawful. It often happens that parties use very inapt expressions in drafting their instruments; yet their true meaning and intention may be fairly gathered from the instrument, when thus considered. The

court must place itself in the situation of the contracting parties at the time of executing the instrument; and if, with a full understanding of the force and import of the language thus illustrated, the meaning and intention of the contracting parties cannot be ascertained, the instrument is void for uncertainty.—1 Greenl. Ev. § 300; 4 Mass. 205. "Every deed", says Parsons, C. J., in the case just cited, "ought to be so construed, if it can, that the intent of the parties may prevail, and not be defeated."

To make an application of these rules : A railroad was about being constructed from Montgomery to West Point, or elsewhere on the Chattahoochee river. The grantors in this deed owned lands over which it would probably run; but, as it was not certain what land would be covered by the track, they were unable, of course, to specify the particular portions of the soil which should be dedicated to the road. The object of the railroad company was to obtain the right of way—the liberty of appropriating so much of the soil as should be necessary for the construction of the road over the lands of these proprietors. The grantors were willing to contribute to this work of improvement—to grant to the company "so much of any part" of their respective lands as might "be necessary in the construction of said road." They virtually say to the company, "Should your road run over any lands owned by us, enter upon any part of such lands, and use so much of any part as shall be needed for the construction of the road, and the portion so necessarily used we hereby convey to you." There is nothing uncertain in this contract which can affect its validity. The parties have agreed upon the means by which the land is to be ascertained, which is the subject-matter of the grant. The appropriation of the land under the grant was made by the agents of the company, or its assignee, under the immediate inspection of the grantor, who, so far from objecting, aids in the construction of the road, thus giving a practical illustration of his (then) interpretation of the contract.

We will not say that the deed operates as a conveyance in fee of the land necessary to the construction of the road. Taking in the whole scope of the instrument, and the inducement which led to it, as well as the object to be accomplished

by the grant, the location and construction of the railroad, and the benefits accruing therefrom to co-terminous proprietors of land, it may be that the law, in the absence of any express qualification, will imply a termination of the estate, when the object of its creation shall have ceased—that is, when the land shall cease to be occupied as the track of the road. Viewed in this aspect, the grant would confer a title in the nature of a base fee.—Wharton's Conveyancing, pp. 39–40. Be this, however, as it may, it amounts to more than a mere license to occupy, conferred as a personal privilege, and founded in personal confidence. It is a grant to a corporation, which changes its officers, which has expended a large sum of money, under the observation, and without objection from the grantor. It confers not only a license to enter upon and use the land for the erection of the road, but the land itself is granted for the object contemplated, so soon as designated by the appropriation, that being the means provided in the contract for its ascertainment, (2 Ro. 55; Hobart, 174); and, whether this grant be absolute or conditional, makes no difference, since, in either aspect, the interest of the company might be transferred under the tenth section of its charter, or by the general law aside from such provision in the law of its organization.

The question as to the nature of the estate conveyed in the land itself, is not necessarily involved in the record before us; for the deed may be invalid as a grant of the land, and yet operate as a covenant to stand seized to the use of the road.—Wille's Rep. 682; 2 Wm. Saund. Rep. 96 a, n. 1; 1 Pres. Abs. Tit. 313; Broom's Legal Maxims, 415, 416, mar. p.; 15 M. & W. 769. But, viewed in any aspect in which we have considered it,—whether as an executory conveyance, to become perfect when the subject-matter should be ascertained by the location and construction of the road, and then to take effect by relation back to the time of its execution, or in the nature of a base or conditional fee, or as a covenant to stand seized to the use of the company for the purposes of the road, —*ut res valeat,* one thing is exceedingly clear; that is, conceding the deed to be void for uncertainty as a grant, no particular land being described in it, it is binding as a covenant that the company may appropriate so much of any portion of

the land of the grantor as should be necessary to the con-
struction of the contemplated railroad; and the company
having expended their money and labor upon the faith of it,
by the acquiescence of the grantor, and having constructed
the road as therein provided, so that they cannot be placed
in *statu quo*, the covenant operates as a complete estoppel of
the grantor to say that he has a claim for damages by reason
of the appropriation of the land as contemplated by his
solemn agreement. It would be to sanction a gross fraud, to
allow a party to treat as a trespass, and recover damages for,
that which by his covenant and conduct he had superinduced.

Let the judgment be reversed, and the cause remanded.

Rice, J., having been of counsel before his election to the
bench, did not sit in this case.