# McGhee *et al.* v. Alexander *et al.*

*Bill in Equity to enforce Vendor's Lien.*

1. *Parties to a bill; when heirs or distributees may sue without administration.*—When an intestate's estate is free from debts, and the only purposes of an administration would be to reduce the assets of the estate to possession, and distribute them among the next of kin, administration may be dispensed with, and the heirs and distributees may sue in their own name.

2. *Same; suit to enforce vendor's lien by next of kin of intestate, who died in another State.*—The succession to personal property is governed by the law of the actual domicil of the deceased at the time of his death, and that law declares and appoints who are his next of kin; and where an intestate, at the time of her death, had her domicil in the State of Georgia, and the law of that State declared that her surviving husband and children should succeed to her personal estate, share and share alike, a bill to enforce a vendor's lien for the unpaid purchase money of land previously sold by such intestate can be maintained by her surviving husband and children, when it is shown that the intestate's estate was free from debts, and that administration thereon would be a useless ceremony.

3. *Amendment of bill; when no departure from original bill.*—When a bill filed by children of an intestate, who, at the time of her death, was a resident of Georgia, to enforce a vendor's lien for the unpaid purchase money of lands sold by their intestate, it having been shown there were no debts of the estate and no necessity for an administration, an amendment which renders more certain and definite the allegations of the original bill touching the contract of purchase, and introduces the surviving husband of the contestant as a party complainant, is not a departure from the original bill, and is properly al-

[McGhee *et al.* v. Alexander *et al.*]

lowed; the husband being a necessary party, and the proposed amend-
ment introducing no new cause of action, nor varying the relief
sought.

4. *Bill to enforce vendor's lien.*—Where the vendee of land, who has
promised to pay the purchase money on the settlement of certain ac-
counts between the parties, refuses to settle on demand of the vendor,
the vendor may maintain a bill to enforce his lien against the vendee
for the payment of the purchase money, and in the event of the
death of the vendee, he may maintain a suit against his personal rep-
resentative without renewing the request for a settlement; and a
bill for such purpose is not prematurely filed because the settlement,
upon the making of which the purchase money was to be paid,
had not been made, since the refusal of the vendee to make the set-
tlement rendered the performance by the vendor impossible.

5. *Same; amendment of bill; admissibility of parol evidence.*—Where
a bill is filed to enforce a vendor's lien for the unpaid purchase money
of land, which debt is evidenced by a due bill acknowledging that cer-
tain money was due a married woman as a part of the purchase price
of land, deeded by her and her husband, and stating that it was to be
paid "when we settle," the allegations of an amendment to such bill
that there were no debts owing between the vendor and vendee, no set-
tlement to be made between them, and that the settlement referred to
was a settlement between the husband and the vendee, are not con-
tradictory of the written evidence of the debt, since the import of
such writing was that there were transactions which were to be set-
tled between the vendor and vendee by their concurrent act, and
that such settlement was the event upon which the payment of the
money was to be made; and for the purpose of explaining what were
the transactions which were to be the matter of settlement parol evi-
dence is admissible.

6. *Same; suit by one of several co-tenants.*—Where one of several
joint tenants or tenants in common sells his interest in lands by the
consent of his co-tenants, his original co-tenants are not necessary
parties to an action by him to enforce a vendor's lien for the unpaid
purchase money for his interest so sold.

APPEAL from the Chancery Court of Cherokee.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on March 20, 1890, by the
appellees, the children and heirs-at-law of M. J. Alexan-
der, deceased, to enforce a vendor's lien on certain lands,
which were sold by the complainants' intestate to Thomas
Holcomb. After the purchase of said lands by said
Thomas Holcomb, he continued in possession thereof up
to the time of his death, which occurred in January,
1886. John L. Burnett was appointed the administra-
tor of the estate of said Thomas Holcomb, and as such

[McGhee *et al.* v. Alexander *et al.*]

administrator sold, under an order of the probate court, the lands belonging to said estate, among which were the lands involved in this controversy; and at said sale one E. T. McGhee became the purchaser, to whom the deed was made, and from whom the lands were purchased by one Allen Sheers. It was alleged in the bill that the administrator of said Thomas Holcomb, deceased, the said McGhee and Sheers had notice of the non-payment of the said due bill, which had been executed by the said Thomas Holcomb to the said M. J. Alexander. The said Burnett as the administrator, the said McGhee, the said Sheers and Edward Holcomb, the only heir-at-law of said Thomas Holcomb, deceased, were made parties defendant to the bill. By amendment the surviving husband of M. J. Alexander was made a party complainant. The other facts of the case are sufficiently stated in the opinion. The appeal is taken from a decree overruling demurrers filed by the respondents and this decree is here assigned as error.

J. L. BURNETT, for appellant.

HUGH W. CARDEN, *contra.*

BRICKELL, C. J.—The bill is filed to enforce the lien of a vendor for the unpaid purchase money of lands. The written instrument, the evidence of the debt, is in these words: "Due M. J. Alexander, six hundred and twenty-five dollars, balance due on lands, which she and her husband, John B. Alexander, has made me a deed to in which Nos. described. This to be paid when we settle. This February 2nd, 1880. [Signed] THOS. HOLCOMB."

The bill, as amended, is filed by the surviving husband and the children of the payee, who died intestate, having her domicil in the State of Georgia. Under the statute of Georgia, which is set out in the bill, the husband and the children of a married woman dying intestate, succeed to her personal property, share and share alike. The bill avers that there has been no administration on the estate of the intestate; that she was free from debt, and the only purpose of an administration would be the distribution of the debt when collected. It is alleged in the amended bill, that the intestate made repeated efforts to procure the settlement referred to in said writing, as did her husband

[McGhee *et al.* v. Alexander *et al.*]

for her, which were unavailing. That the intestate was not indebted to said Holcomb, and the settlement referred to, was a settlement between the husband and said Holcomb. There is an averment of a readiness and willingness to pay whatever, if anything, may be due from the intestate to said Holcomb. It is further averred that the interest of the intestate in the lands sold said Holcomb was one-fourth interest. That said lands were sold for the aggregate sum of twenty-nine hundred dollars. That the writing was given for the deferred payment of the purchase money of the land by the agreement of all the parties to the sale, one hundred dollars of the fourth part of the aggregate purchase money having been paid her in cash.

There were numerous demurrers interposed to the bill as amended, which for convenient consideration may be orderly arranged as follows:

1.  That the personal representative of the intestate only, can maintain a suit to enforce the lien asserted in the bill.

2.  That the amended bill is a departure from the original bill.

3.  That the bill was prematurely filed, a settlement not having been made between the intestate and said Holcomb.

4.  That the allegations of the amended bill that there was no debt owing by the intestate to said Holcomb, and no settlement to be made between them, and that the settlement referred to, was a settlement between the husband of the intestate, are contradictory of the writing.

5.  That the persons having the three-fourths interest in the lands should have been made parties.

The demurrers were overruled, and from the decree overruling them the appeal is taken.

1.  The equitable lien of the vendor of lands for the payment of the purchase money follows the debt, and on the death of the vendor, his personal representative is ordinarily the proper party to pursue remedies for the enforcement of the lien. There are exceptional cases, however, in which a court of equity is accustomed to dispense with the presence of the personal representative, or with an administration, permitting the next of kin to sue for the recovery of personal assets in their own

[McGhee *et al.* v. Alexander *et al:*]

name and right, reducing them to possession.   When an estate is entirely free from debt, and the only office of an administration, would be the reduction of the assets to possession and distribution, the administration is deemed a "useless ceremony," and it has long been the practice of courts of equity in this State, to dispense with it, entertaining suits by the next of kin.—*Cooper v. Davison*, 86 Ala. 367 ; *Wright v. Robinson*, 94 Ala. 479, and authorities cited.   The succession to personal property is governed exclusively by the law of the actual domicil of the deceased, at the time of his death.   That law declares and appoints who are his next of kin.—Story's Conflict of Laws, § 481.   The intestate at the time of her death, had her domicil in the State of Georgia.   The law of that State, as pleaded in the bill, on the death of a married woman intestate, declares that her surviving husband and children, shall succeed to her personal estate, share and share alike.

2.   The amended bill is in no respect a departure from the original bill.   There is not the introduction of a new cause of action, nor is the relief sought varied.   Whatever of defenses, except the non-joinder of the husband as a party, which could have been interposed to the original bill, can be interposed to the bill as amended.   The amendment renders more certain and definite the allegations of the original bill touching the contract of purchase, and it introduces the husband as a party complainant.   Correcting by amendment, errors of omission or commission, is a matter of right, co-extensive with the errors; and unless there is an entirely new case made, or there is a radical departure from the cause of action stated in the original bill, or unless there is an entire change of parties plaintiff or defendant, the amendment performs its proper office.—3 Brick Dig. 380, § 209.

3.   It may be conceded to the appellants, that according to the terms of the instrument, the payment of the money was dependent upon a settlement to be made between the parties; the settlement was to be the concurrent act of the parties, and the vendee as well as the vendor contracted, each, to do all that was necessary to effectuate the settlement.   When the vendee, on request, failed or refused to enter into or to make the settlement, he failed to do the part he had contracted to perform, rendering performance by the vendor impossible.   "In the

case of dependent promises, a plaintiff who has come
short of fulfilment because the defendant prevented him,
may maintain his action.''—Bishop on Contracts, § 1424.
Nor was it necessary, after the death of the vendee, to
renew to his personal representative the request for the
settlement. The contract was broken and the right of
action accrued in the life of the vendee ; and the liability
he incurred survived against his personal representa-
tive.

4. Contracts must be interpreted in the light of the
facts surrounding the parties when they were made.
There cannot be a departure from the words of a writ-
ten contract, they must have their full import and force ;
but to arrive at the true sense in which the parties em-
ployed them, courts of necessity consider the occasion
which gave rise to the contract, the relation of the par-
ties, and the object to be accomplished.—*Pollard v. Mad-
dox*, 28 Ala. 321. As is said by Bishop : "The parties
speak in their contract from the fountain of their mutual
knowledge, and if we would properly interpret their
words, we must put ourselves exactly in their position,
and know just what they mutually know, with neither
addition nor abatement.''—Bishop on Contracts, § 370.
It is only by the aid of parol evidence that courts can
ascertain what were the circumstances under which a
contract was made ; what was the relation of the parties,
and what was within their mutual knowledge. The ad-
mission of the evidence, is not an infringement of the
rule that parol evidence is inadmissible to contradict,
add to, or vary a contract in writing, the evidence simply
helps to a proper understanding of the words and stipu-
lations of the writing. The case before us is illustrative.
Without the aid of parol evidence disclosing the facts
under which the instrument was made, and the relative
position of the parties, it could never be known in what
sense they employed the words, "when we settle"; to
what the words refer ; what were the transactions which
were to be the matter of settlement. If it be true, as
alleged in the bill, that there were no unsettled transac-
tions between the vendor and vendee, that the only
transaction ever had between them was the sale of the
lands and the making of the written instrument, all
presumption or intendment that the words "when we
settle", refer to unsettled transactions between them, is

[Ward v. Janney & Cheney.]

removed and repelled. And if it be further true, as alleged in the bill, that there were unsettled transactions between the husband and the vendee, the matter or subject of these words is ascertained and identified. The words do not necessarily import that there were unsettled transactions between the vendor and the vendee, involving the one in liability to the other. Their real import is, that there were transactions which were to be settled by their concurrent act, and that such settlement was the event upon which the payment of the money was to be made.

5. The parties originally owning the lands in common, or jointly with the vendor, were not necessary or proper parties. By their consent there was a severance of the estate or interest of the vendor, and the sale of that estate or interest to the vendee.

It follows from what we have said, the demurrers were not well taken, and were properly overruled, and the decree must be affirmed.