28 So.2d 186

**OLSSON et al. v. NELSON.**

**I Div. 272.**

Supreme Court of Alabama.

Dec. 5, 1946.

Wm. G. Caffey, Jack C. Gallallee and Thos. A. Hamilton, all of Mobile, for appellants.

Frank S. Coffin, of Mobile, for appellee.

BROWN, Justice.

Louis M. Nelson, late of Mobile, Alabama, died testate, leaving surviving his wife Helena W. Nelson; two brothers Charles and James Edward Nelson; three sisters, Theresa Olsson, Etta Schmidling and Bernadine Anderson. After directing payment of his debts and funeral expenses, he bequeathed to his widow all the property of which he was seized and possessed. "both real, personal and mixed of whatever kind and nature and wherever located."; nominated his widow as the executrix of his will with full power "to sell any bonds, stocks or real or personal property of which he might die seized and possessed without the authority, permission or order of any court whatsoever." Relieved her of giving bond or accounting for the proceeds of his estate so bequeathed to her. Within a few days after his death and before the probation of his will, his widow Helena W. Nelson entered into a tripartite agreement with Theresa Olsson and Bernadine Anderson, stipulating

"That, for and in consideration of the purchase, by the party of the third part from the party of the first part, of the real property commonly known as Olsson's Tourist Court (this day conveyed by the party of the first part to the party of the third part), and, in further consideration of the consent by the party of the second part to the said sale and conveyance, the party of the first part does hereby agree that, when the last will and testament of her late husband, Louis M. Nelson, shall have been duly admitted to probate in the County of Mobile and State of Alabama, she, the said party of the first part, will execute an instrument conveying to the brothers and sisters of the said Louis M. Nelson, Deceased, Who Survived The said decedent, in equal proportions, all of the right, title and interest of the said party of the first part as the devisee of the real property owned by the said decedent at the time of his death and devised by him to the said party of the first part.

"And, for the said consideration, the party of the first part does hereby further agree that, when the last will and testament of her said late husband shall have been duly admitted to probate in the County of Mobile and State of Alabama, she, the said party of the first part, will execute and instrument conveying to the said party of the second part, all of the right, title and interest of the said party of the first part, as the legatee of the personal property of the said decedent, in and to

the personal property of which he died seized and possessed, with the exception of the cash, bonds, and other securities and choses in action, life insurance, wearing apparel and other personal effects."

The bill in this case filed by the appellant Theresa Olsson against Charles Nelson, Etta Schmidling, Bernadine Anderson, James Edward Nelson, Helena W. Nelson, Joseph G. Espalla and Leo M. Brown seeks to have this contract construed and specifically enforced. The trial court rejecting parol testimony adduced to show the facts and. circumstances surrounding the parties and attending the execution of said contract, and looking only to the four corners of the contract itself, interpreted the same and entered the final decree specifically enforcing it as so interpreted. From that decree this appeal is prosecuted by the complainant and the respondents other than Helena W. Nelson, Joseph G. Espalla and Leo M. Brown.

Neither the will of Louis M. Nelson, deceased, nor the tripartite agreement specifically describe the property, the subject matter thereof, and the controversy between the parties arises over the meaning of the language "all of the right, title and interest of the said party of the first part as the devisee of the real property owned by the said decedent at the time of his death and devised by him to the said party of the first part", as used in the first paragraph of the contract; and the language "all of the right, title and interest of the said party of the first part, as the legatee of the personal property of the decedent, in and to the personal property of which he died seized and possessed, with the exception of the cash, bonds and other securities and choses in action, life insurance, wearing apparel and other personal effects."

The evidence is without dispute that among other property owned by Louis M. Nelson, deceased, was a half interest in Olsson's Tourist Court, the other half being owned by his wife as tenant in common. They had purchased this property from Theresa Olsson for $25,000 and had paid of the purchase money $12,000, leaving a balance of $13,000 secured by a lien in the nature of a vendor's lien, reserved in the contract of sale by Theresa Olsson. The contract also reserved to Theresa Olsson the legal title to the furniture and fixtures located and used in the Tourist Court, but stipulated if and when the Nelsons paid the purchase price in full the personal property located and used in the operation of said tourist court would become their property, the contract prohibiting any lease or sale of said property without the consent of Mrs. Olsson, until the purchase money was paid in full, Mrs. Helena W. Nelson, being desirous of quick realization on this investment and of recovering the amount the Nelsons had invested in this property, entered into said tripartite agreement. The evidence shows that Mrs. Anderson borrowed some of the money from Mr. Olsson and paid to Helena W. Nelson the sum of $12,000 and received a conveyance from her to said property known as Olsson's Tourist Court. And Mrs. Olsson assumed and paid the balance due from said decedent to sundry persons for some of the furniture and fixtures used in said tourist court.

Among other property, the subject matter of said tripartite agreement, was a lot on Government Street owned by Nelson which he acquired in a family settlement of his deceased mother's estate, specifically described in the bill and referred to by the parties in the course of this litigation and brief as Nos. 10 and 12 Government St. At the time of Nelson's death this property was subject to a mortgage held by Theresa Olsson, given by Nelson and wife, for $7,500, and pending the bill in this case that mortgage was foreclosed and the property purchased at the foreclosure sale applying the proceeds of the sale to the by Charles Nelson for $9,000. And after mortgage and the expense of foreclosure, there was left in the hands of the respondent Joseph G. Espalla, the auctioneer, the sum of $1,292.85. Espalla in his answer disavowed any interest in said sum or in this litigation and alleges that he is ready, willing and able at any time to pay said sum into court upon instructions of the court.

Another parcel of land, the legal title to which was in Nelson at the time of his

death which occurred in March, 1944, was located on Cedar Point Road in Mobile County and is specifically described in the bill, but is referred to by the parties in the course of this litigation as the "Cedar Point Road Property". On June 4, 1943, Nelson and wife had entered into a contract for sale of this property to Arthur Smith and wife Patty Smith for the sum of $3,250, payable $400 in cash, the balance in monthly payments of $25 each every 30 days thereafter with interest. Pending the bill in this case the United States in an ad quod damnum proceeding instituted in the Federal Court condemned this property for use as a part of Brookley Field Development, a military camp, as the property of Louis M. Nelson and Smith and wife and the proceeds of the condemnation proceedings allotted as compensation for Nelson's interest in the Cedar Point Road property, $2,529.04, was paid into the registry of the circuit court by the clerk of the United States District Court. The Cedar Point Road property was also acquired by Louis M. Nelson in the family settlement of his mother's estate.

Charles Nelson was in possession as lessee of the Government Street property also referred to as "The Tavern" and the appellee Helena W. Nelson collected from him the sum of $1,000 unearned rent, which she deposited with her attorney at the time, Leo M. Brown, one of the respondents in this cause, to be distributed and paid to the brothers and sisters of the decedent as provided in said tripartite agreement.

In the final decree the court treated the interest of the decedent in the Cedar Point Road property as a chose in action within the exception in the second clause of the tripartite agreement. The appellees challenge the soundness of this conclusion and assert that it was an interest in real property and not within the exception.

The assignments of error do not challenge the soundness of the decree in respect to the Government Street property.

The final decree also concluded that the rents on the Government Street property accruing after Nelson's death, $583.33 due and unpaid from Charles Nelson, and the $1,000 collected by the respondent Helena W. Nelson and left in the hands of Leo M. Brown her attorney, was within the exception to said contract and awarded the same to said respondent Helena W. Nelson.

The appellants challenge the soundness of this holding.

The final decree also concluded that the sum of $600 in the hands of the complainant, received by her as rents from the Government Street property, is within the exception of the contract as a chose in action and awarded this to the respondent Helena W. Nelson. The assignments of error challenge this holding.

We are of opinion that the challenges above indicated are well grounded; that the trial court erred in refusing to consider oral testimony adduced by the parties to identify the subject matter of the tripartite agreement, and to aid in its interpretation.

■■ It is well settled law that "Contracts must be interpreted in the light of the facts surrounding the parties when they were made. There cannot be a departure from the words of a written contract. They must have their full import and force. But to arrive at the true sense in which the parties employed them, courts of necessity consider the occasion which gave rise to the contract, the relation of the parties, and the object to be accomplished. Pollard v. Maddox, 28 Ala. 321. As is said by Bishop: 'The parties speak in their contract from the fountain of their mutual knowledge, and if we would properly interpret their words we must put ourselves exactly in their position, and know just what they mutually know, with neither addition or abatement.' Bish. on Cont., § 370. It is only by the aid of parol evidence that courts can be certain what were the circumstances under which a contract was made; what was the relation of the parties, and what was within their mutual knowledge. The admission of the evidence is not an infringement of the rule that parol evidence is inadmissible to contradict, add to, or vary a contract in writing. The evidence simply helps to a proper understanding of the words and stipulations of

the writing." McGhee et al., v. Alexander, 104 Ala. 116, 121, 122, 16 So. 148, 149.

The foregoing rule of interpretation has been repeatedly reaffirmed and applied. Nunnally & Co. v. Bromberg & Co., 217 Ala. 180, 188, 115 So. 230; Kirkland v. O'Kelly, 218 Ala. 68, 70, 117 So. 420; Scheuer v. Britt, 218 Ala. 270, 273, 118 So. 658; Merchants' Nat. Bank of Mobile v. Hubbard, 220 Ala. 372, 374, 125 So. 335; Pizitz-Smolian Co-Operative Stores v. Randolph et al., 221 Ala. 458, 465, 129 So. 26; Mercantile Finance Corp. of Ala. v. Scruggs, 227 Ala. 585, 587, 151 So. 353.

■ The maxim ejusdem generis is also applicable as an aid in ascertaining the meaning of the words "Other securities and choses in action", the doctrine being that where an enumeration of specific things is followed by some more general words or phrases, such general words or phrases shall be held to refer to things of the same kind." 28 C.J.S., Ejusdem, p. 1049; Nettles v. Lichtman, 228 Ala. 52, 56, 152 So. 450, 91 A.L.R. 1455; North American Accident Ins. Co. v. Pitts, 213 Ala. 102, 104 So. 21, 40 A.L.R. 1171.

■ Another rule in respect to the interpretation of contracts of doubtful import is that the court will look to the contemporaneous interpretation of the parties where such interpretation appears. Montgomery Enterprises et al., v. Empire Theater Co., 204 Ala. 566, 86 So. 880, 19 A.L.R. 987.

■ Applying the maxim ejusdem generis, the terms "other securities and choses in action" clearly partake of the nature of cash and bonds, unsecured obligations, resting upon the full faith and credit of the obligor.

Interpreting the tripartite agreement in the light of these rules and the parol testimony and other evidence going to show that Mrs. Nelson, being desirous of recovering the money she and her husband had invested in Olsson's Tourist Court, the $12,000 in cash paid to her by Mrs. Anderson, and in consideration of the purchase by Mrs. Anderson, she engaged to convey to the surviving brothers and sisters of her deceased husband all the real property which he had received in the

family settlement of his mother's estate, together with the earnings of said property in rents accruing subsequent to the execution of the tripartite agreement, and Mrs. Nelson's contemporaneous practical interpretation, through her act in collecting the $1,000 rent on the Government Street property and placing the same in the hands of her attorney at that time (Leo M. Brown), to be distributed in equal parts to the brothers and sisters of her deceased husband, and the act of Mrs. Olsson, the complainant, of collecting rent for the apartments on the second floor of the Government Street property and retaining it in her possession for distribution among the heirs, her brothers and sisters, our conclusion is that the interest of said decedent in the Cedar Point Road property, the legal title to which was in him at the time of his death, was treated by the contracting parties as an interest in real estate, within the influence of the tripartite agreement, and therefore, the $2,529.04 paid into the registry of the Circuit Court of Mobile County by the clerk of the United States Court as compensation for Nelson's interest, should be distributed to the surviving brothers and sisters of Louis M. Nelson in pursuance of said agreement.

■ We are also of opinion that the sum of $1,000 unearned rents of the Government Street property collected by Helena W. Nelson and deposited with Leo M. Brown by her with instructions to distribute it in equal parts to the brothers and sisters of the decedent was treated by the parties as an interest of said Nelson in real property to be distributed among the surviving brothers and sisters of said decedent in pursuance of said tripartite agreement. And the unpaid rent of $583.33 accruing after the execution of the tripartite agreement in the hands of Charles Nelson for like reason should also be distributed in equal parts among the surviving brothers and sisters of said Louis M. Nelson in pursuance of the tripartite agreement.

We are also of opinion that the $600 received by the complainant from the Government Street property as rent is in the class with the other rent and should likewise be distributed to the surviving broth-

ers and sisters of said Louis M. Nelson named in the bill.

The decree of the circuit court is corrected as above indicated and as corrected is affirmed. The cost of this appeal is taxed against the appellee Helena W. Nelson.

Corrected and affirmed.

GARDNER, C. J., and LIVINGSTON and SIMPSON, JJ., concur.