30 So.2d 261

### McCLENDON et al. v. EUBANKS.

### 8 Div. 375.

Supreme Court of Alabama.

March 20, 1947.

Application for Rehearing Withdrawn
May 13, 1947.

Julian Harris and Norman W. Harris, both of Decatur, for appellants.

Peach, Caddell & Shanks, of Decatur, for appellee.

STAKELY, Justice.

This is an action by Paul H. Eubanks (appellee) against Dennis McClendon and Lina Hodges McClendon (appellants) for breach of contract. Lina Hodges McClendon is the wife of Dennis McClendon. The trial resulted in a verdict and judgment for the plaintiff. This appeal is from that judgment.

On April 16, 1945, the defendants were the joint owners of a brick building in Decatur, Alabama, in which they conducted a harness and saddlery manufacturing business. On that date the building was damaged by fire. On April 18, 1945, D. Ben Garrett, a contractor and a witness for defendants, made an estimate of the damage

to the building with an adjuster for an insurance company in order to adjust the loss with the insurance company. Mr. Garrett made an itemized statement of the items of work needed to be done in order to restore the building to its former condition. The statement made an itemized estimate of the cost of doing the various items of work. The total estimate aggregated $4,715.96. This statement was introduced in evidence by the plaintiff. The insurance company paid to the defendants the amount of $4,715.96 in payment of the loss to the building.

On April 20, 1945, repairs to the building were commenced by Mr. Garrett under an agreement with the defendants by which Mr. Garrett agreed to repair and renovate the building in such particulars as the defendants might determine from time to time for which the defendants agreed to pay Mr. Garrett the cost of all labor and material entering into the work, plus ten percent thereof as the contractor's profit. At about the same date H. D. Casey, who was engaged in the plumbing and electrical supply business, made an agreement to do certain plumbing and wiring in the building and commenced performance of this work.

Between April 20, 1945 and April 30, 1945, the date of the contract which is the basis of the present suit, Mr. Casey and Mr. Garrett had completed various items of work in and about the repair and renovation of the building. These items consisted of replacing the plateglass in front of the building, which Mr. Garrett sub-contracted for $660.70 to the Decatur Glass Company, replacing rear windows of the building, installing a commode in the southwest corner of the first floor, removing ceiling from balcony of building and marking off an office space by the construction of uprights from the first floor to the balcony.

On April 30, 1945, the defendants sold and conveyed the property in question to the plaintiff and took a mortgage to secure part of the purchase price. At the same time the defendants leased from plaintiff certain parts of the building for use by the defendants in carrying on their harness and saddlery business. The lease was introduced in evidence by the plaintiff. It contains section 7 which is the basis of this suit. Section 7 of the lease is set out in count 1 of the complaint which is the only count in the complaint. Since this case depends on the construction to be given section 7 of the lease and involves a question of pleading relating to count 1, count 1 will appear in the report of the case.

It appears from section 7 of the lease that the parties agreed that some of the items listed in the itemized estimate of damage made by Mr. Garrett would be done, that some of the items would not be done and that certain additional items of work not listed in the estimate would be done. These additional items of work were that a partition would be constructed through the building so as to separate the part of the building leased by the defendants from the part of the building retained by the plaintiff and that an office space with rest room and a stairway and door and doorway would be constructed in the part of the building leased by the defendants. The plaintiff was to construct the partition and pay for it and the defendants were to have charge and supervision of doing all the agreed items of work in the part of the building leased by them. After the execution of the lease and while the work was progressing, plaintiff instructed Mr. Garrett to build a partition and to remove a stairway and to remove a stairwell and to close up the hole left by removing the stairwell and to put in some new flooring in the part of the building leased by the defendants. There was evidence tending to show that the plaintiff during the progress of the work authorized and agreed on the performance of other additional items of work in the building, some of which plaintiff admitted and some of which he denied.

Mr. Casey completed the wiring and plumbing in the building and Mr. Garrett completed various items of the work shown in the estimate and the items agreed to in the written contract, including the partition and various additional items, and presented to defendants a bill for $3,573.44 which included the amount due him and the amount due Mr. Casey for wiring and plumbing including an item of $75 for wiring defendants' machinery. Defendants paid this amount to Mr. Garrett by their check dated May 15, 1945. After this payment was

made the plaintiff objected to the amount of it. On May 28, 1945, defendants paid to plaintiff $1000 by check in partial settlement of the amount due him from the insurance money. Thereafter plaintiff and defendant Dennis McClendon and Mr. Garrett met and discussed the matter with the result that defendans offered to pay plaintiff the difference between the amount collected from the insurance company on the one hand and the payment made to Mr. Garrett (less the $75 deducted on account of wiring the machinery), partial payment of $1000 made to plaintiff and an item of $40 on account of repairs to the telephone booth and elevator. During the progress of the work plaintiff and defendants agreed that no repairs would be made to the phone booth as listed in the estimate but that defendants would repair the elevator in the building and would be entitled to retain $40 of the insurance money for so doing and defendants did, repair the elevator. The amount which defendants offered to pay plaintiff was arrived at as follows:

Count 1 also contains the further allegation:

"The items for which defendants are entitled to credit, which was agreed to in said contract or verbally subsequent to the execution of said contract are as follows: * * *."

was reduced to $822.48. The only pleas of the defendants were the general issue and tender.

Assignments of error are predicated on (1) the action of the court in overruling the demurrer to count 1, (2) the rulings of the court in admitting parol evidence in connection with the written contract and (3) the rulings of the court in giving or refusing certain written charges.

It will be noted that count 1 contains the following allegations:

"And plaintiff alleges that the total necessary cost of the repairs and construction done by the defendants on said building as provided by the estimate referred to in said contract made by Athens Lumber Company and by agreement of the parties as to such construction, as was not provided in said estimate is the sum of $2469.45, and that the defendants have paid to the plaintiff the sum of $1,000.00 of the amount due the plaintiff under the provisions of said section of said contract and that the balance unpaid thereon is the sum of $1246.51, which is herein sued for."

It is the appellants' theory that the foregoing allegations taken together show that the contract was modified by the parties after its execution and that since the complaint does not allege the terms of the amendatory or modifying agreement, the court was in error in not sustaining the demurrer which aptly raised this question. However, the ruling of the court in this

|  | | |
|---|---|---|
| Insurance fund | | $4715.96 |
| Deduct: | | |
| Payment for work by Garrett & Casey | | |
| ($3573.44 less $75.00) | $3498.44 | |
| Payment to plaintiff | 1000.00 | |
| Credit, phone booth & elevator | 40.00 | 4538.44 |
| Total Deduc. | $4538.44 | $ 177.52 |
| Amount Due & Offered | | |

The plaintiff refused the foregoing offer of settlement. Both Mr. Garrett and Mr. Casey testified that the respective amounts paid to them represented the reasonable cost of the work done by them.

The verdict of the jury was in the sum of $1,000 and since the sum of $177.52 had been theretofore paid into court under a plea of tender, the amount of the judgment

regard was correct. It is true that where an agreement has been modified by subsequent agreement, the plaintiff should declare on the agreement as modified. 13 C.J. § 835, p. 721. See also 17 C.J.S., Contracts, § 535. But we do not consider that such a situation is presented here. The fair meaning of the allegations of count 1 is that the plaintiff is entitled to receive the amount

of the proceeds of the insurance less certain credits. Among these credits, according to the contract, was to be the "cost of other repairs and construction." The count sets out the items of repair and the respective cost thereof for which credit is to be given. The only new agreement is the agreement to bring certain specific additional items for credit within the original contract. The additional items merely further reduce the original demand of the plaintiff, because they are to be taken as additional credits against the amount of the insurance settlement. The additional items accordingly are really defensive matter and if there is omitted anything of benefit to the defendants in respect to the additional items, the defendants should plead the omitted matter. Moore et al. v. Williamson, 213 Ala. 274, 104 So. 645, 42 A. L.R. 981. It is not a question here of suing on a modified agreement, but rather an admission in the complaint of additional credits against plaintiff's demand allowed by subsequent agreement.

In order to pass on the rulings of the court on the evidence, we approach the problem in much the same way. Under the contract we think it clear that the plaintiff was entitled to receive from the defendants the amount of the insurance fund less certain credits. According to the defendants, under section 7 of the lease, the insurance money was to be used as follows: First, in paying for the work which had been done when the contract was made; second, in paying for the work of which they were to have supervision; third, in paying for other repairs and construction to the building, which would include the partition, any work which might be done by plaintiff, and any other items the parties might agree on; and fourth, any balance remaining would be paid to the plaintiff.

It is the contention of the plaintiff that there is no provision providing for payment for the work which had been done when the contract was made and that at best the provisions of the contract are ambiguous and uncertain in this regard. With this last view the court agreed and over the objection of the defendants admitted parol testimony to show the conversations of the parties prior to and leading up to the contract in order to interpret the contract in this regard. These are the rulings assigned as error.

As shown above, prior to April 30, 1945, the date of the contract, Mr. Casey and Mr. Garrett had completed various items of work in repair and renovation of the building. The defendants paid for these items. They claim that they are entitled to credit for payment of these items. Let us examine the contract in this regard. In such examination we are governed by settled legal principles.

In McFadden & Bro. v. Henderson, 128 Ala. 221, 29 So. 640, 642, this court made this concise statement of the principle:

"When the terms and conditions of a contract are certain, its construction is a question for the court and not for the jury."

Again in Dunlap v. Macke, 233 Ala. 297, 171 So. 721, 724, this court said:

"It is familiar law, applicable to the interpretation of contracts, that where the same is in writing it is the duty of the court to interpret it and declare its legal effect. * * * So, also, where the stipulations are plain and unambiguous, there is no room for interpretation, and the parties thereto 'may stand upon the letter' of the contract. * * *."

But if the language of the contract is not plain and unambiguous, then parol evidence is admissible to aid in interpretation of the contract. Olsson v. Nelson, 248 Ala. 441, 28 So.2d 186; Weir v. Long, 145 Ala. 328, 39 So. 974.

Section 7 of the contract commences with the recital that "Said building was recently damaged by fire and is now being renovated and repaired." The concluding sentence of section 7 of the contract provides, "It is understood and agreed that the lessees will use such part of said sum of $4715.96 as may be necessary to pay the cost of the repairs to said building which have already been made." The foregoing language is plain and unequivocal and needs no construction or interpretation. It clearly provides for payment of repairs already made.

But after referring in the foregoing opening words to the recent damage by fire and the present renovation and repairs

and the estimate for repair and renovation by Athens Lumber Co. (This is D. Ben Garrett), the language of the contract is also as follows: "It is understood and agreed that the part of the said building being leased to the lessee shall be renovated and repaired by the doing of the various items shown on said estimate." Then follows the enumeration of specific items to be included in addition to those shown on the estimate and the deletion from the estimate of certain items mentioned therein. As we understand the record certain items had been completed on the date of the contract in the part of the building leased to the defendants, which do not appear in the estimate.

■ Upon a careful consideration of the foregoing provisions of section 7 of the contract we conclude that there is such conflict in these provisions as to make the contract uncertain and ambiguous. If the repairs for which credits are to be allowed are restricted to those shown in the estimate with certain specified additions and certain specified exceptions, then there appears to be a conflict with the provision providing in effect that the lessees may use such part of the fund as may be necessary to pay the cost of the repairs which have already been made. Accordingly we think that the court was not in error in allowing parol evidence tending to shed light on the intention of the parties in this regard. Olsson v. Nelson, supra; Weir v. Long, supra.

■ Assignment of error is based on the action of the court in excluding the testimony of the witness Garrett to the effect that the first work he performed in the building was the removal of quite an amount of debris caused by the fire. The theory of the appellants is that there could be no repairs unless the debris caused by the fire was first removed. The witness Garrett testified that the fire caused a good bit of debris and that he had to remove the debris before he could start to work. Obviously the ruling of the court prohibited the jury from making any allowance for the cost of that work. But consistent with what we have said, we think the jury had the right to make such an allowance if under all the evidence they thought that the contract provided for payment for work done before the contract was made on April 30, 1945, and that removal of the debris was within the meaning of the contract. McGhee v. Alexander, 104 Ala. 116, 16 So. 148. The court was in error in this regard.

■ In keeping with what we have said on the admissibility of parol testimony, it is obvious that there was no error on the part of the court in refusing charge 3 requested by the defendants. The same observation can be made with reference to the court's refusal to give charge 2 requested by the defendants, because this charge assumed that the defendants were entitled to a credit for the amount paid the Garrett Lumber Company in spite of the fact that the jury might consider from the evidence that the defendants were not entitled to credit for items representing the cost of work done before the contract was made on April 30, 1945.

This brings us to a consideration of charge 3 given at the plaintiff's request. When the negotiations of the parties had been completed, the defendant, Dennis McClendon, told the plaintiff that he had an attorney and suggested that this attorney draw the contract. To this plaintiff agreed. The parties then went to the attorney together and requested that he draw the contract, deed and mortgage. Together they told the attorney what had been decided and then together with the attorney they went to the building and there the matter was explained. After the contract was written, the parties each read the contract very carefully and went over the contract with the attorney together item by item. Each paid one-half of the fee for preparing the contract. Plaintiff paid the fee for drawing the mortgage and defendants paid the fee for drawing the deed.

In King v. Capital Amusement Co., 222 Ala. 115, 130 So. 799, this court said:

"And in case of doubt as to the purport and meaning of the writing, the doubt will be resolved against the party who drew it."

See also Comer v. Bankhead, 70 Ala. 136; Mutual Life Ins. Co. of New York v. Lovejoy, 201 Ala. 337, 78 So. 299, L.R.A.1918D, 860; 12 Am.Jur. § 252, p. 795.

The rule, however, is not here applicable because the attorney was the attorney for both parties in the preparation of the contract. There can be no objection to this arrangement where the attorney acts with the full knowledge and consent of both parties. Lawall v. Groman, 180 Pa. 532, 37 A. 98, 57 Am.St.Rep. 662; Jones v. Howard, 99 Ga. 451, 27 S.E. 765, 59 Am. St.Rep. 231; 5 Am.Jur. § 265, p. 297.

The giving of charge 3 requested by the plaintiff was prejudicial to the defendants.

For the errors indicated the judgment of the lower court is reversed and the cause is remanded.

Reversed and remanded.

GARDNER, C. J., and BROWN and FOSTER, JJ., concur.