(134 So. 9)

# WISCONSIN–ALABAMA LUMBER CO. v. SEWELL.

## 5 Div. 66.

Supreme Court of Alabama.

April 9, 1931.

Rehearing Denied April 30, 1931.

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellant.

Pruet & Glass, of Ashland, for appellee.

ANDERSON, C. J.

It is well settled by the decisions of this court that the deed, Exhibit A to the bill of complaint, and under which the complainant claims title to the timber, conveyed the absolute title to the timber which did not revert to the grantor and was not lost to the grantee by a failure to cut and remove same from the land within the period fixed by the deed. C. W. Zimmerman Mfg. Co. v. Daffin, 149 Ala. 380, 42 So. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58; Mt. Vernon Lumber Co. v. Shepard et al., 180 Ala. 148, 60 So. 825; Vizard v. Robinson, 181 Ala. 349, 61 So. 959; Wright v. Bentley Lumber Co. et al., 186 Ala. 616, 65 So. 353; West v. Maddox et al., 193 Ala. 612, 69 So. 101. It must be borne in mind that this deed was made in 1902 and is not controlled by subsequent statutes as codified in the Code of 1923.

The deed, however, conveyed only the merchantable timber on the land at the date of its execution and did not include or extend to timber not then merchantable, but which may have become so in the future. Wright v. Bentley Lumber Co. et al., 186 Ala. 616, 65 So. 353. It is therefore incumbent upon the complainant, in order to establish ownership to the timber, to aver and prove that what is being removed and marketed was merchantable when the deed was made in 1902. The bill avers ownership, and, if defective for failing to charge that the timber was merchantable as of said date, there is no ground of demurrer as to this defect.

While this court has uniformly given these timber deeds the above-mentioned construction, it seems to have denied the owner of the timber any legal remedy thus far pursued to get the timber after the expiration of the time limit for cutting and removing same.

In the case of Long v. Nadawah Lumber Co., 202 Ala. 523, 81 So. 25, the court held that the owner of the timber could not maintain trover against the owner of the land for converting the timber. The present writer did not agree to this, and I still think that, while the owner of the land had the right to clear the same and remove the timber therefrom, yet, if he disposed of it or converted it to any particular use, trover would lie in favor of the owner of the timber, but the majority of the court held otherwise, and the present bill removes all doubt, even if there be the existence of a legal remedy by charging the insolvency of the respondent.

In the case of Ward v. Moore, 180 Ala. 403, 61 So. 303, the court held that the owner of the timber could not maintain ejectment.

There is a broad statement in the case of Irwin v. Shoemaker, 205 Ala. 13, 88 So. 129, that ejectment may be maintained to recover timber standing and growing upon the land, but, whether this statement was sound or not, the complainant in that case was the owner of the land and had the right to maintain ejectment against one who was in possession of same under a claim to own the timber, and such was the case quoted from. Bolland v. O'Neal, 81 Minn. 15, 83 N. W. 471, 83 Am. St. Rep. 362. The case of Christopher v. Curtis-Attalla Co., 175 Ala. 484, 57 So. 837, was an action of ejectment, but this particular question seems not to have been considered or decided, but it merely cites the case of Heflin v. Bingham, 56 Ala. 566, 28 Am. Rep. 776. In this Bingham Case, supra, the action of ejectment was by the owner of the land against one in possession under a timber claim, just as the Minnesota case, supra. At any rate, this identical question was decided in the case of Ward v. Moore, supra.

As we understand, the owner of the land is under no duty to bear the burden of

the timber after the vendee's time for removing same has expired, and should be permitted to clear his land by cutting the timber and getting it out of the way, but the bill avers that this is not being done for the purpose of cultivating or utilizing the land, but for marketing and selling the timber. We do not understand that the relationship between these parties is such that would invoke the rule against an equitable waste, as the owner of the land expressly limited the vendee's right to come upon his land and remove the timber, and it would be inequitable and unjust to hold that he must be deprived of the use and benefit of his land for the purpose of growing and preserving the timber of another which should have been removed within the time limit. On the other hand, it would be equally as unjust and inequitable to permit the owner of the land to convert to his own use the property of another or to so destroy the timber of the complainant which is not essential to the legitimate exercise of the right to enjoy the use of the land. Lyon v. Hunt, 11 Ala. 295, 46 Am. Dec. 216.

▮ We think the bill contains equity as to injunctive relief against the converting of the timber into lumber and the disposing of same, and, if there is an appreciable amount of lumber in the hands of the respondent, the trial court could well appoint a receiver to take charge of and dispose of same and appropriate the proceeds between the parties according to equity and good conscience.

The trial court erred in sustaining the demurrer to the bill of complaint, and its decree is reversed, and one is here rendered overruling same, and the cause is remanded.

Reversed, rendered, and remanded.

SAYRE, BOULDIN, and FOSTER, JJ., concur.

BOULDIN, J. (concurring specially).

It cannot be questioned that the doctrine of Zimmerman v. Daffin, 149 Ala. 380, 42 So. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58, has long since become a rule of property. The statute abolishing the rule could not, as of course, affect property rights theretofore vested.

It follows then that the grantee of the timber or his successor is still the owner thereof.

By failure to remove the standing timber within the time granted, his property is occupying the lands of another. This, however, not by a trespass of the timber owner upon the land, but by virtue of a grant that still vests in him the ownership of the timber.

Having failed to remove it within the time stipulated, the privilege purchased and paid for, he should be required to compensate the owner for any further rights of way necessary to effect the use and enjoyment of his property.

Moreover, by nonremoval he has had the use of the soil to sustain and maybe contribute to the growth of his timber, a beneficial use of the land of another growing out of the status declared in the Daffin Case, supra. For this he should compensate the owner of the soil, and an equitable lien on the timber may be well recognized in favor of the owner for extended privilege of removal and the use of the soil after the time stipulated.

Inasmuch as no remedy at law is available to protect both parties in their rights, it seems to me to present a case for which courts of equity came into being. Such courts should have and do have, in my opinion, power to mold relief which will protect both.

Inasmuch as the owner of the land has granted and been paid for the timber, and it is still the property of the grantee, I cannot see the equity in allowing the grantor to destroy the property of another even in the use of his own.

Certainly it should not be permitted, in the absence of any necessity so to do, and in my judgment no such necessity should be forced on him by the refusal of the courts to remedy the situation.

I am of opinion either party should have a right to go into equity to effect a severance of the timber from the land, and a disposition of the proceeds as the equities shall appear. I see no good reason to wait until one party has invaded the rights of the other by making merchandise of his property, and then limit the relief to the proceeds of property thus wrongfully converted. To my mind the present ownership of the property with no right in any one to its use and enjoyment as a continuing status is the equivalent of the destruction of property rights.

"Every person, for any injury done him, in his lands, goods, person, or reputation, *shall have a remedy* by due process of law." (Italics supplied.) Constitution of Alabama, § 13.

Touching the suggestion of laches because of failure to remove during the long period stipulated in the timber deed and some five years thereafter, it must be said the grantee purchased and paid for the right to have the timber remain on the land for the full period. No legal remedy, it appears, has been open to the owner of the timber thereafter. An equitable remedy in my opinion exists and has existed alike in favor of both parties.

This is not intended to express approval of the Daffin Case as an original proposition, but to deal with the results of that rule in an equitable way.

I concur in the opinion holding the bill has equity, but think it too limited.

SAYRE, J., concurs in the foregoing.

BROWN, J. (dissenting).

I am of opinion that the bill is without equity; that the demurrers thereto were properly sustained, and that the decree of the circuit court should be affirmed.

The bill is filed, not by the original grantee of Varner and wife—the Lathrop-Hatten Lumber Company—who under the grant of April 22, 1902, was given twenty-one years to remove the timber from the land, but by the grantee of said Lathrop-Hatten Lumber Company, to wit, Wisconsin-Alabama Lumber Company, who acquired its claim after the lapse of the twenty-one years.

The bill is filed more than twenty-six years after the said Lathrop-Hatten Lumber Company acquired its rights, and more than five years after its right to enter upon the land of Varner and wife, and those claiming under them had expired, and, so far as appears, the filing of the bill in this case is the first and only assertion of any claim or right under the alleged grant of Varner and wife to said Lathrop-Hatten Lumber Company by any one, or that any such right has been for more than a quarter of a century recognized by the original grantors or those claiming under them.

There is an absence of averments in the bill showing or tending to show any sort of excuse for the failure of the grantee in said deed—Lathrop-Hatten Lumber Company—to cut and remove the merchantable timber within the twenty-one years allowed by the grant, or that it has borne any of the burdens of taxation during such time.

The averment of the bill as amended is not that the complainant owns the timber that was merchantable on the 22d of April, 1902, but that "it now owns *all the merchantable timber*" on said land. When the complainant acquired or began to claim such right does not appear.

In the meantime—between the grant of Varner and wife to Lathrop-Hatten Lumber Company and the filing of the bill—the property, both land and timber, was conveyed to Mims and wife, and before the filing of the bill they conveyed the same to respondent by warranty deed.

The bill as amended avers: "That the source of title of J. B. Mims who granted same to the said Walter M. Sewell was W. A. Varner, the same source of title from which Your Orator's rights were acquired, and that the right and title of the said J. B. Mims was acquired from the said W. A. Varner after the recording of the conveyance marked Exhibit A hereto attached, and with *constructive knowledge* on the part of the said Mims of the right and title conveyed by said contract and deed shown as Exhibit A." But it is not averred when or where said conveyance was recorded, or that the respondent had any notice, actual or constructive, of complainant's rights. (Italics supplied.)

It further appears that, between the date of the original grant and the filing of the bill, the value of the *merchantable* timber on said tract has increased fivefold—from one hundred to five hundred dollars.

The Varner deed, under which the complainant claims, stipulates: "That the Lathrop-Hatten Lumber Company shall have and they are hereby granted until the 22nd day of April, 1923, within which to cut and remove from said lands the timber hereby conveyed to said grantee, and the Lathrop-Hatten Lumber Company shall have during said time full right of way over and across any part of said land for that purpose, and *that the party of the first part hereby* agrees that during the time aforesaid they will not grant to any person, firm or corporation any right of way, on, over, across, through or upon said lands hereinbefore described or referred to for the purpose of building a tram road, railroad or pole road to remove timber." (Italics supplied.)

The relief sought is to enjoin and prevent the respondent from cutting and removing "*any of said timber* and the products thereof from said land, and for the appointment of a receiver to take possession of the property, both surface and timber, so as to adequately improve the surface rights of the respondent and at the same time preserve and protect the rights of your orator." (Italics supplied.)

In other words, the court is invited to go into the business of husbandry, clear the respondent's lands, and separate and segregate the timber that was merchantable more than a quarter of a century ago from that which was not then merchantable, but now is; market the same and turn the proceeds over to the complainant—an undertaking fraught with such uncertainty as to lead into a field, at best, of mere conjecture as to the timber that passed under the grant, and involves a process requiring personal supervision, extending over a considerable period of time which a court of equity should not undertake. Olive v. Fayette County, 219 Ala. 172, 121 So. 703; Bromberg v. Eugenotto Construction Co. et al., 158 Ala. 323, 48 So. 60, 19 L. R. A. (N. S.) 1175.

To sustain the equity of this bill some of the fundamental principles of equity jurisprudence must be either uprooted or wholly ignored.

In the first place, the complainant is a volunteer. It purchased long after the time

stipulated for the removal of the timber had expired, in the face of the decisions of this court that the owner of the timber could not maintain the *equitable* action of trover for the conversion of the timber. Long v. Nadawah Lumber Co., 202 Ala. 523, 81 So. 25; that the owner of the land could not maintain ejectment, Ward v. Moore, 180 Ala. 403, 61 So. 303; that he cannot cut and remove it from the land without becoming a trespasser, Zimmerman Mfg. Co. v. Daffin, 149 Ala. 380, 42 So. 858, 9 L. R. A. (N. S.) 663, 123 Am. St. Rep. 58; that a court of equity will not authorize such purchaser, after the stipulated time for removal, to enter and remove it *"since the powers and processes of a court of chancery cannot be employed to sanction a legal wrong,"* Mt. Vernon Lumber Co. v. Shepard, 180 Ala. 148, 60 So. 825; that the owner of the timber had no right to invoke the jurisdiction and powers of a court of equity to have the property sold for division in order to sever his interest. Shepard v. Mt. Vernon Lumber Co., 192 Ala. 322, 68 So. 880, 15 A. L. R. 23. (Italics supplied.)

Therefore the right acquired by the complainant when it purchased was nothing more than a shadow, the substance having disappeared through the negligence and inactivity of its predecessor in title, and by the lapse of twenty-one years allowed for removal of the timber.

The observation of the court in Mt. Vernon Lumber Co. v. Shepard, 180 Ala. 148, 155, 60 So. 825, 828, is not only pertinent, but conclusive against the equity of the bill. It was there said: "The bill in this instance would invoke aid of a court of equity to enable it (appellant) to enter upon the lands of the grantors, and to remove the timber to which it has the legal title. * * * As appears, the five years within which under the instrument of conveyance appellant was required to remove its timber expired before this bill was filed. To now, under any sanction, enter for the removal thereof, would be a trespass—a wrong. Equity's process and powers cannot be so employed." 180 Ala. 155, 156, 60 So. 825.

That was a bill filed by the original purchaser, while here the bill is filed by a purchaser after the expiration of the time for removal, who took mere gambler's chance, and is now invoking the powers and processes of a court of equity to enforce and collect the winnings.

Another principle opposed to the equity of the bill is: "Nothing can call forth into activity a court of equity but conscience, good faith, and reasonable diligence. When these are wanting, the court is passive, and does nothing. This maxim not only covers generally the subject of laches, * * * but it has also been employed very broadly to *deny relief generally to those who neglect to take care of themselves, and who thereby suffer losses which ordinary care would have prevented."* (Italics supplied.) 10 R. C. L. 388, § 138; Gayle v. Pennington, 185 Ala. 53, 64 So. 572; 21 C. J. 225–232; Roberts v. Hughes, 81 Ill. 130, 25 Am. Rep. 270; Bibber v. Carville, 101 Me. 59, 63 A. 303, 115 Am. St. Rep. 303.

And the principle is especially applicable where the rights of third parties have been permitted to intervene to such extent as to be materially affected if the negligent party should prevail. Graham v. Boston, etc., R. Co., 118 U. S. 161, 6 S. Ct. 1009, 30 L. Ed. 196; Snyder v. Charleston & S. Bridge Co., 65 W. Va. 1, 63 S. E. 616, 131 Am. St. Rep. 947.

And, likewise, if the property involved is of a fluctuating character, or speculative in value, more than ordinary diligence and promptness is required. Gilmer v. Morris, 80 Ala. 78, 60 Am. Rep. 85; 21 C. J. 225.

The complainant took the property burdened with the result of the gross negligence of his predecessor, and is clearly not entitled to equitable relief.

I therefore respectfully dissent.

GARDNER and THOMAS, JJ., concur in the foregoing dissent.