37 So.2d 125

**COLEY et al. v. W. P. BROWN & SONS LUMBER CO., Inc., et al.**

**7 Div. 957.**

Supreme Court of Alabama.
Oct. 7, 1948.

236

Irby A. Keener, of Centre, for appel-.
lants.

Hugh Reed, Jr., of Centre, and Lusk,
Swann & Burns, of Gadsden, for appellees.

BROWN, Justice.

This appeal is from the final decree of the circuit court sitting in equity making permanent a temporary injunction theretofore issued at the instance of the appellees, restraining and enjoining appellants from interfering with the appellees—the lumber company and its contractee—in cutting and removing timber on a large tract of land in Cherokee County which it purchased from appellants. The deed conveying the timber and timber rights, reciting the consideration paid by appellee, was executed and delivered on August 30, 1938. The deed of conveyance embodied the following stipulations and covenants:

"It is further mutually agreed by and between the Grantors and the Grantees that the Grantee herein is to have all of the rights and privileges heretofore conveyed for a period of five (5) years on all of the above lands, with the exception of the above limitations and in addition thereto, the Grantee herein is to have an additional two year period, making a total of seven (7) years from the date hereof to cut and to remove the timber on that portion of the above described lands that is located or situated upon the mountains, and this grant of seven years shall particularly apply to the lands situated in Sections 34 and 35 of Township 11, South of Range 9, as above described. It is also further hereby agreed that should conditions beyond the control of the Grantee prevent the removal or the cutting of any portion of the timber hereinbefore conveyed, *then and in that event, the Grantors hereby covenant and agree that they shall grant an extension of one year from the termination of the times hereinbefore set out to the Grantees without any further consideration therefor, than the execution of these presents,* and that after the termination of said period of five (5) years, *and the termination of the grace period of one year, as to all of the timber* except that portion thereof that is located or situated on the mountain, and after the termination of the period of seven (7) years from this date, and after the expiration of such one year grace period thereafter as to the timber located or situated on the mountain, it is mutually understood and agreed that all rights hereunder are to cease and terminate at the expiration of said periods of time, and shall revert to and vest in the Grantors herein or their heirs and assigns.

"Grantors reserve the right to take possession of the lands or any part or portion thereof after the Grantee has finished cutting all of the timber on any tract or tracts for the purpose of clearing the same and putting it into cultivation, this right to be exercised by and with the consent of the Grantee, its successors or assigns. * * *."

The lands involved in this litigation are those as to which the complainants were granted the right to remove the timber within five years, with the covenant to extend the time, "should circumstances beyond the control of the grantees prevent the removing or the cutting of any portion of the timber hereinbefore conveyed."

While the complainants were in the exercise of the right to cut and remove the timber from the lands during the year 1943 and before the expiration of the five years, the complainants requested an extension of said time under said covenant, which the defendants refused to grant and notified complainants that after the 30th day of August, 1943, complainants' rights under the conveyance would terminate.

At the expiration of the five year period appellants warned complainants not to trespass and brought an action at law against the complainants for damages for trespassing on said lands and cutting and removing timber and for the statutory penalty therefor. It was at this juncture that the complainants filed the bill in this case and applied to the judge of the circuit court for a temporary injunction which was granted

The defendants' contention, stated in their answer and cross-bill, is that "on or after August 30, 1938, the date of the conveyance, plaintiffs exhibit #1, to plaintiff corporation, plaintiff corporation has purchased the timber from other lands aggregating some twenty-five thousand acres or more in Jackson, DeKalb and Cherokee County, Alabama, and in Chatooga and Floyd Counties, Georgia and that from the timber purchased after defendants timber was purchased by said plaintiff corporation, several millions of feet of timber have been cut, the amount being many times the total of the timber upon defendants land at the time of the conveyance, plaintiff corporation knowing at the time it purchased said other lands and cut the timber therefrom that the time period upon defendants lands expired on August 30, 1943, and that despite this knowledge continued its operations on other lands than those of defendants, with the expressed purpose and intention of obtaining an additional years growth of the timber upon defendants said lands without compensating defendants therefor.

"Defendants further aver that ample labor, machinery and equipment was available to cut and remove said timber from off said lands within said 5 year period of time, had plaintiffs been willing to pay the prevailing prices paid by other lumber people and concerns for like labor, such prices being entirely reasonable and that any failure of the plaintiff corporation to obtain such labor and service was due entirely to its own fault in refusing to pay prevailing prices for like labor but insisting upon paying its employees a lower price for their said labor than was being paid by other people and concerns engaged in like business."

The final decree states the question presented and the conclusion of the court after consideration of the testimony submitted in the case. We quote from the decree:

"The question of prime importance in this case and on which a decision turns is whether conditions beyond the control of the grantee prevented it from cutting and removing the timber from the lands in which it had five years for such operation. The greater part of the testimony offered by both sides is directed to that point. Many witnesses testified for both the complainants and respondents and the record is voluminous. It is not practical nor necessary to review in detail the testimony, but that offered by the complainants tended to show that soon after the entry of the United States into the War in 1941, a shortage of labor and certain materials was experienced by the lumber company and that the conditions grew worse as this time went on and that its production and ability to produce and meet its commitments was greatly reduced—that the condition was general in the sawmill and lumber industry and was attributable to conditions brought about by the war, and beyond its control—that as a result thereof the Brown Lumber Company was not able to cut and remove this timber and much other timber it had bought and on which there was a time limit for removal; that as a matter of course it had a 'back log' of timber which was necessary in such an operation. The testimony offered by the respondents tended to show that labor was not materially reduced nor were supplies curtailed which would effect the lumber and sawmill industry in this section of country except that in the latter part of 1943 there was some shortage of labor, and that the complainants had ample time, labor and equipment to have cut and removed the timber in question. In short the testimony of the respondents was contradictory to most of that offered by the

complainants. There was contradictory evidence as to whether the respondents had agreed to cut the timber themselves and whether their failure caused any delay.

■ "Under the decisions of our Supreme Court and the statutes governing, the title to the timber conveyed was in the grantee during the five year period and also the one year grace period. Code 1940, Title 47, Sections 46–49. Also Allison Lumber Co. v. Robinson, 219 Ala. 644, 123 So. 15; Wisconsin-Alabama Lumber Co. v. Sewell, 222 Ala. 696, 134 So. 9. So to deny the grantee the right to enter on land and cut and remove timber which it has bought, the evidence should be so impelling as to warrant the enforcement of a forfeiture. Forfeitures are to be strictly construed and are not favored.

■ "It is well known law that courts take judicial knowledge of matters and facts known to the general public. In weighing and considering the evidence the court may also consider such matters as were of common knowledge during the war years, and about which there is a controversy in this case.

"As shown by the evidence, the Brown Lumber Company, in keeping with good business practice, acquired a 'back log' of timber for future operation. There is no substantial evidence that it had over-extended itself had not the war with its resultant conditions occurred. Much of its timber purchases were lost by the expiration of time limits for removal. Under the condition it was not encumbent on the company to concentrate on this particular tract of timber, but it had the right to view all of its operations to determine what was reasonable in its effort to fulfill its obligations. There is much testimony to the effect that a reasonable effort was made to cut and remove the timber on this tract, but there still remained something like a million and one-quarter feet left to cut when the time limit expired.

"The Court has reached the conclusion that conditions beyond the control of the complainant, Brown Lumber Company, prevented it from removing the timber and that judgment should be for the complainants."

Although the defendants demurred to the bill the demurrer was not submitted until the submission for final decree and it appears that the court made no ruling in respect thereto. However, the appellants insist that the bill is without equity and that complainants have a complete and adequate remedy at law.

While the brief for the appellants does not follow the rule and state the propositions of law upon which they rely, the substance of their contention is that the complainant lumber company was guilty of negligence in respect to exercising their right and their failure to cut the timber was not caused by circumstances beyond their control. Hence, they forfeited the right to demand an extension of one year to complete the cutting, as provided in the covenant embodied in the deed. The legal effect of the deed executed by the appellants to the complainant lumber company was to vest in the appellee the legal title to the lumber with the right to remove the same within five years, and in consideration of the purchase money paid for the timber and timber rights, the defendants entered into a covenant to grant a year's extension of time to complete the work, if the failure to do so was caused or resulted from circumstances beyond its control. Such payment vested in the complainant lumber company a complete equity to such extension and a right to specific performance of that covenant, in the absence of a negligent or willful forfeiture of that right. St. Clair Springs Hotel Co. v. Balcomb et al., 215 Ala. 12, 108 So. 858, 861.

In the last cited case it was said: "If it be conceded that the deed was insufficient to convey title, the testimony shows the payment of the purchase price by the grantee. Thereby the latter was vested with a perfect equity which a court of chancery jurisdiction will respect. Copeland v. Warren, 214 Ala. 150, 107 So. 94. Although the Phelps deed failed to designate the county, the county is sufficiently shown when that instrument is considered with all the other evidence. Jenkins v. Woodward Iron Co., 194 Ala. 371, 69 So. 646."

■■ A court of equity looks through form to substance and while it cannot create a right contrary to the agreement of the

parties or to essential stipulations thereof, it regards as done that which ought to be done, and unless it clearly appears that the right to the extension has been forfeited by the negligence of the complainant, it will treat stipulations in the covenant as specifically performed, vesting in the complainant the legal right to cut and remove timber for which they have paid the purchase price. Jefferson Lumber Co. v. Powers, 223 Ala. 63, 134 So. 464.

■■ Only a court of equity has jurisdiction to relieve against forfeiture. Hunter–Benn & Co. Company v. Bassett Lumber Co., 224 Ala. 215, 139 So. 348. Therefore, the contention of the appellant that the bill was without equity cannot be sustained.

■ "It is well settled law that 'Contracts must be interpreted in the light of the facts surrounding the parties when they were made. There cannot be a departure from the words of a written contract. They must have their full import and force. But to arrive at the true sense in which the parties employed them, courts of necessity consider the occasion which gave rise to the contract, the relation of the parties, and the object to be accomplished. Pollard v. Maddox, 28 Ala. 321. As is said by Bishop: "The parties speak in their contract from the fountain of their mutual knowledge, and if we would properly interpret their words we must put ourselves exactly in their position, and know just what they mutually know, with neither addition or abatement." Bish. on Cont., § 370. It is only by the aid of parol evidence that courts can be certain what were the circumstances under which a contract was made; what was the relation of the parties, and what was within their mutual knowledge. The admission of the evidence is not an infringement of the rule that parol evidence is inadmissible to contradict, add to, or vary a contract in writing. The evidence simply helps to a proper understanding of the words and stipulations of the writing.' McGhee et al. v. Alexander, 104 Ala. 116, 121, 122, 16 So. 148, 149." Olsson et al. v. Nelson, 248 Ala. 441, 445, 446, 28 So.2d 186, 189.

■ The testimony taken is voluminous, the record embodying 510 pages to which we have given painstaking consideration, and we find ourselves in agreement with the conclusions stated in the decree from which this appeal is prosecuted. The record appears to be free from reversible errors and the decree will be affirmed.

Affirmed.

FOSTER, LAWSON, and STAKELY, JJ., concur.