### SHALL v. HENRY et al.
### No. 10966.

United States Court of Appeals
Seventh Circuit.
March 5, 1954.

Louis M. March, Chicago, Ill., for appellant.

Vincent D. McConnell, Charles H. Watson, Chicago, Ill., Peabody, Westbrook, Watson & Stephenson, Chicago, Ill., of counsel, for appellees.

Before DUFFY, LINDLEY and SWAIM, Circuit Judges.

LINDLEY, Circuit Judge.

Plaintiff appeals from an order dismissing his suit. His original complaint, filed January 30, 1952, averred that he, a licensed manager of professional athletes, had a contract with defendant Clarence Henry, a boxer, whereby he was to participate in Henry's management and receive a percentage of the resulting profits. He sought an accounting from defendants Henry, Stiefel and Palermo, the two latter being co-managers with plaintiff, asserting that they were attempting to deprive him of his share of the profits realized from the boxing matches in which Henry had been engaged from time to time and in which he might engage in the future. At that time Henry was about to participate in a contest under the auspices of the International Boxing Club, Inc., an Illinois corporation. The Club was joined as defendant, not because it was a party to the contract but because it was the responsible party sponsoring the match. Plaintiff sought to segregate such moneys as might come into the hands of the corporation for the benefit of Henry and his managers.

An application for a restraining order was made, at which counsel for the corporation appeared, insisting that the court had no jurisdiction. The court, being fully occupied with a busy calendar, referred the application to the master for settlement of issues and recommendations. On February 4, the corporate defendant filed a formal motion, entering a special appearance, questioning the jurisdiction of the court and, shortly later, the three individual defendants Henry, Stiefel and Palermo presented a similar motion. On February 21, plaintiff filed an amended complaint, enlarging substantially upon his original averments. Again all defendants entered special appearances and moved to dismiss for want of jurisdiction. On March 29, plaintiff filed a second amended and supplemental complaint, further elaborating upon his original averments. The motions to dismiss for want of jurisdiction previously filed were allowed to stand to this amended complaint. On May 9, plaintiff filed his fourth complaint, calling it a "third amended and supplemental complaint", wherein he named as additional defendants International Boxing Club, Inc., a New York corporation, International Boxing Club of Michigan, Inc., a Michigan corporation, and International Boxing Club of Missouri, Inc., a Missouri corporation.

He included in this pleading a claim against all defendants for treble damages incurred, as he averred, as the result of an alleged conspiracy upon their part in violation of the Anti-Trust laws of the United States. Defendants again interposed motions to dismiss for want of jurisdiction, insisting that diversity of citizenship did not exist; that the amount in controversy did not exceed $3000; that no valid cause of action was stated in the claim for damages under the Anti-Trust Act and that the court lacked jurisdiction of the suit because it appeared from the complaint that plaintiff resided in California and not in Illinois and that not all of the defendants resided in the Northern District of Illinois as required by 28 U.S.C. § 1391.

On July 14 plaintiff was permitted to file his fifth pleading, namely, an amended and supplemental complaint enlarging upon the charges for an accounting and upon those under the Anti-Trust Act. The motions to dismiss for want of jurisdiction previously interposed were permitted to stand to this fifth and final complaint.

Arguments upon the motions to dismiss were heard by the master on July 22. On October 24 he filed his report, finding that the question of jurisdiction of the action under 28 U.S.C. § 1391 had been timely raised and that the cause must fail because of that statutory provision. He recommended further that, in view of the fact that there was no averment that anything was due from the corporate defendants, under the law of Illinois, they were not subject to equi-

table garnishment; that the claim for accounting must, therefore, fail as to them, and that no sufficient cause of action under the Anti-Trust Acts was presented against any of the defendants.

The court approved the report of the master and dismissed the complaint. The court also refused at that time to permit plaintiff's motion to file a sixth pleading, i. e., one amending the last one filed. Upon appeal plaintiff insists that the court erred in each of the respects mentioned.

■ All defendants were charged in the second portion of the final complaint with having violated the Anti-Trust Acts. We are of the opinion that the District Court rightly held that this claim failed to state a cause of action under the statute. That the business of professional baseball is not within the Anti-Trust Act, was established in Federal Baseball Club of Baltimore v. National League of Professional Baseball Clubs, 259 U.S. 200, 42 S.Ct. 465, 66 L.Ed. 898.

The Supreme Court, on November 9, 1953 adhered to this doctrine in Toolson v. New York Yankees, Inc., and two other cases disposed of at the same time, 346 U.S. 356, where the court declared, at 357, 74 S.Ct. 78, at 79, that Congress "had no intention of including the business of baseball within the scope of the federal antitrust laws." Those decisions must control unless there is some significant legal distinction between the business of promoting and producing boxing bouts at various places in the United States and that of professional baseball. A District Court has recently held that boxing is not to be distinguished from that of a professional baseball game, in U. S. v. International Boxing Club, Inc. (D.C.S.D.N.Y., Feb. 8, 1954, Noonan, J.) The same court, in U. S. v. Schubert (Dec. 30, 1953, Knox, J.) held that there is no legal difference between theatrical production and professional baseball.

We agree that a professional boxing contest is not to be distinguished legally from that of a professional baseball game. Obviously each involves a contest of physical skill and endurance taking place in a particular locality. The success of each depends upon the support of the public in the purchase of tickets and the sale of radio and television rights. Each baseball game is unique; no two are exactly alike. Each boxing contest is unlike any other. The profitable promotion of each depends upon the same elements. Under the mandate of the Supreme Court, therefore, we must hold that it was not the intention of Congress to extend the provisions of the Anti-Trust laws to athletic contests such as those involved in boxing. Consequently the District Court properly dismissed the complaint in so far as it involved a suit for treble damages under the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note, and the Clayton Act, 15 U.S.C.A. § 12 et seq.

■ The corporate defendants were included as defendants in the accounting charge solely because they were said to be promoting boxing exhibitions and, in doing so, were collecting money which would eventually be due in part to the participants, a percentage of which in turn would accrue to plaintiff. The theory seems to be that plaintiff had a right to have the court decree an equitable lien upon and isolate moneys thereafter becoming due defendant Henry from the corporation as a result of his participation in bouts. Whether such a contention is correct must be determined by the laws of Illinois. As the master has pointed out, this question has been decisively determined in Lewis v. West Side Trust & Savings Bank, 288 Ill.App. 271, 6 N.E.2d 481. There plaintiff sought to tie up moneys which he claimed might become due him, though held by third persons, by establishing an equitable lien on or garnishment of the funds in the hands of third persons held for the benefit of others. The court framed the question thus 288 Ill.App. at page 277, 6 N.E.2d at page 484: "We gather from the argument of complainants that the purpose of this order is to retain the property of its stockholders in the possession of the bank or the receiver so that should a judgment be entered in this

suit against a stockholder for his constitutional liability, complainants could satisfy the judgment out of the property so retained by the receiver. In other words, such procedure and remedy as would be equivalent to an attachment at law." After discussing the Illinois authorities, the court continued: "There is no such thing as equitable attachment in this state and the theory of taking away the control of a person's property by means of an injunction for the purpose of anticipating a judgment which may or may not thereafter be obtained by a litigant is abhorrent to the principles of equitable jurisdiction. As Mr. Justice Caton said in his opinion in the Phelps case, which we have just quoted: ' * * * I am not aware of any principle of equity jurisprudence which will justify the issuing an injunction in such a case, to compel the parties to hold the goods pending a trial at law, to see if they will not be wanted to answer an execution upon a judgment which the complainant hopes to obtain.'" 288 Ill.App. at pages 278–279, 6 N.E.2d at page 484.

■ The Illinois statutes provide for attachment suits, but plaintiff has made no attempt to comply with those acts. They provide also for garnishment of funds, after a judgment has been entered but remains unsatisfied, in the hands of third persons, but plaintiff has not brought himself within those provisions. Therefore, under the averments of the complaint, in view of the Illinois decisions, none of the corporate defendants could be compelled to hold such funds as might come into their hands for the benefit of Henry in order that the court might later determine how much thereof, if anything, might be due plaintiff. Consequently the court properly dismissed the accounting suit as to the corporate defendants.

■ There remains for disposition, therefore, only the accounting charge against the three individual defendants. However, we find it unnecessary to determine whether a valid claim for an accounting has been presented, for the reason that, in our opinion, the court was

without jurisdiction to proceed. The suit was based upon diversity of citizenship. 28 U.S.C. § 1391 provides that a civil action founded only on diversity of citizenship may be brought only in the judicial district where all plaintiffs or all defendants reside. The record discloses that plaintiff was a resident of California and that of the defendants only one was a resident of Illinois. Defendants Henry, Stiefel and Palermo all resided in other states. Consequently, if the point was properly and timely raised, the court was without jurisdiction to proceed against any of the defendants. Seaboard Rice Milling Co. v. Chicago, R. I. & P. Ry. Co., 270 U.S. 363, 46 S.Ct. 247, 70 L.Ed. 633.

We have observed that, from the beginning, each of the defendants has insisted that the court was without jurisdiction. They might have filed answers and in them preserved the question of jurisdiction. Rule 12 of Civil Rules of Procedure, 28 U.S.C.A. However, no answers were filed but motions to dismiss for want of jurisdiction and for failure to state a cause of action were interposed to each of the many pleadings submitted by plaintiff. Where neither defendants nor plaintiff reside within the district, the court has no jurisdiction. Such is the intent of the statute and it must control. Blank v. Bitker, 7 Cir., 135 F.2d 962; Martin v. Lain Oil & Gas Co., D.C.E.D.Ill., 36 F.Supp. 252. Consequently the court properly dismissed the entire suit. Admitting *arguendo* that the nonresident corporations were doing business in the Northern District of Illinois, the fact still remains that none of the other defendants was a resident of that district. This fatality of jurisdiction is decisive.

■■ We think the trial court properly found that no waiver of the rights to be sued in the proper district had occurred. There is not the slightest bit of evidence in the record to show that defendants waived their right to object to the jurisdiction of the court. As we said in Blank v. Bitker, 7 Cir., 135 F.2d 962, at page 966: "Under the Federal

Rules of Civil Procedure, which were in effect when this action was instituted, the prior practice as to waiver was changed so that defenses to the merits may now be set up in the same pleading which includes defenses of lack of jurisdiction of the person and wrong venue, without waiving the latter defenses. Rule 12(b) so provides, in stating that 'no defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading * * *.' And authorities supporting and applying Rule 12(b) are growing in number. Accordingly, special appearances to challenge jurisdiction over the person or improper venue are no longer necessary." See also Martin v. Lain Oil & Gas Co., D.C., 36 F.Supp. 252, at pages 254–255. Here, when the fifth and last pleading was presented, defendants might have filed an answer, setting up the question as to jurisdiction under Section 1391, while answering on the merits, without a waiver of the right to object because plaintiff had not brought himself within Section 1391. Rule 12(b). Instead of answering, it presented its motion to dismiss. We agree with the master that this was timely pleading.

■ In view of the many amendments to the complaint permitted by the court and the voluminous pleadings filed as a result, even though the right to amend is to be construed liberally, we think the court did not abuse its discretion in denying at the time of judgment application to amend still further. There must be an end sometime to applications to amend. Plaintiff had five chances to state his case. Under the circumstances disclosed by the record, there was no abuse of discretion in this respect. This conclusion is fortified by the fact that the disposition of this case upon the points upon which we have relied could not have been avoided by further amendments. The fatal questions of jurisdiction and venue could not have been avoided by any amendment. The fact that no proper action under the Anti-Trust Act exists could not have been obviated. Consequently, whether the amendment was allowed or not, this court would have been impelled to reach the conclusion it has reached on the deficiencies referred to in this opinion.

In view of our conclusions we do not reach the further questions submitted by the parties. The judgment is

Affirmed.