This appeal results from a judgment rendered against appellant in the Circuit Court of Madison County. Appellee, Bill Traughber, brought a civil action for breach of contract against appellant, Darrell Walker (doing business as the Huntsville Employment Agency). Traughber's lawsuit was tried before a jury and a verdict was entered in favor of Traughber awarding him damages in the sum of $882.98. From that judgment Walker appeals.
Basically, there are three issues presented to this court for review. First, Walker contends that the trial court's admission of oral testimony by Traughber concerning his employment contract with the Huntsville Employment Agency violated the "parol evidence rule." Second, Walker claims that the trial court improperly refused to permit an amended answer by his attorney in order that Walker might raise the affirmative defenses of release and full performance. Finally, Walker urges that the trial court erred in failing to grant a new trial on the basis that evidence discovered after trial disclosed that Traughber had falsified the application he submitted to the Huntsville Employment Agency.
This appeal arose out of the following facts. In September of 1975 Traughber read a newspaper advertisement which stated that the Huntsville Employment Agency was seeking applicants for the position of sheet metal worker at an unspecified firm. Traughber went to the agency to apply for the position advertised. After some preliminary discussions with Mrs. Gail Snow (an *Page 919 
agency employee) about the terms of the standard contract used by the agency, Traughber signed a written agreement with the Huntsville Employment Agency. Upon signing the contract provided by the agency, Traughber was sent to interview for the sheet metal worker's position with Vernon Hutchens, owner of the Hutchens Company. After the two men had discussed the position available, Hutchens offered Traughber a job and the latter accepted the offer.
Traughber began his employment with the Hutchens Company on September 18, 1975. A few weeks after beginning his job, Traughber returned to the Huntsville Employment Agency and signed an acceptance slip provided by the agency. In addition, Traughber paid a $1,000.00 fee to the agency for its services.
On November 13, 1975 — approximately fifty-five days after he had begun work — Traughber's employment with the Hutchens Company was terminated because the company lacked sufficient work for him. The following day, Traughber telephoned the Huntsville Employment Agency and informed Mrs. Snow that he had lost his job at the Hutchens Company. He then explained to her why he had been terminated. Nothing was done to resolve Traughber's dilemma at this time; however, on subsequent occasions Truaghber made inquiries to the agency in an effort to determine if the agency had found him new employment. Nonetheless, Traughber never obtained a new position through the services of the Huntsville Employment Agency.
As a consequence of these events, Bill Traughber brought a civil action for breach of contract against Darrell Walker and his firm, the Huntsville Employment Agency.
The first issue presented on this appeal is based on Traughber's claim that Walker's employee promised Traughber that any employment secured for him by the employment agency would be of a permanent nature. And since Traughber paid the prescribed fee to the agency but was employed for a period of only approximately fifty-five days, he submits that the agency breached its contract by not providing him with "permanent" employment. Traughber also argues that the employment agency failed to find him a new position as it had agreed to do.
On the other hand, Walker asserts that the contract between his employment agency and Traughber was not breached since express provisions of the employment agreement provide that the agency "only handles permanent positions." Thus, Walker contends that Traughber's employment with the Hutchens Company constituted a "trial job" which was not covered by the contract between Traughber and the Huntsville Employment Agency and therefore the agency was under no legal obligation to obtain alternative employment for Traughber.
These contentions by the parties initiated the events out of which the dispute over the "parol evidence rule" actually arose. During his case-in-chief, Traughber's attorney sought to introduce oral testimony by Traughber that an employee (or employees) of the agency had informed Traughber that the agency guaranteed employment for a minimum of ninety days. The lawyer who represented Walker immediately objected to such testimony on the grounds that its admission would violate the "parol evidence rule." Both parties then presented arguments concerning the proffered testimony. After the attorneys for both litigants concluded their debate on the issue, the trial court overruled the objection which had been made by Walker's attorney and the following exchange occurred:
 "Q. Butch, [Traughber] on September 11, 1975, when you were at this employment agency did you have additional conversations with Mrs. Gail Snow [agency employee]?
"A. Yes, sir.
 "Q. What additional conversation did you have with her?
 "A. We were discussing the contract in general, the fee to be paid and the guarantee of employment and she stated that all we offer is full time employment service, but if in fact you get laid off or work ceases on your job within a ninety *Page 920 
day period we will guarantee you another job in the same pay scale that you are making there."
On appeal, Walker claims that the trial court erred in permitting the above quoted testimony. Specifically, Walker asserts that the effect of the oral evidence which was introduced was to modify or vary the express terms of the written contract between Traughber and the Huntsville Employment Agency. Therefore, Walker submits that Traughber's testimony violated the rule against parol evidence.[1] We disagree.
The "parol evidence rule" is generally considered to be a rule of substantive law rather than a rule of evidence.Restatement of Contracts, § 237, comment a (1932). But regardless of whether it is considered to be a rule of substantive law or a rule of evidence, the rule against parol evidence is subject to numerous exceptions. Moreover, a strict, formal and technical interpretation of the rule has generally been abandoned. Young v. United States, 327 F.2d 933 (5th Cir.); Parker v. McGaha, 294 Ala. 702, 321 So.2d 182.
Simply stated, the "parol evidence rule" forbids the parties to a written contract to supplement the terms of the contract by extrinsic evidence. The rule does not, however, forbid the admission of extrinsic evidence to explain the meaning of words contained in the writing. Riegel Fiber Corp. v. Anderson GinCo., 512 F.2d 784 (5th Cir.). Indeed, such evidence is often necessary for the purpose of ascertaining the circumstances under which a contract was made; the relationships between the parties to the contract; and any facts which may be deemed to be within the mutual knowledge of the parties. Coley v. W.P.Brown Sons Lumber Co., 251 Ala. 235, 37 So.2d 125. And the admission of extrinsic evidence to clarify these matters or explain ambiguous terms contained in the contract is not an infringement of the rule that parol evidence is inadmissible to contradict, add to, or vary a contract in writing. See Parkerv. McGaha, supra; Coley v. W.P. Brown Sons Lumber Co., supra.
In the instant case Walker objected to oral testimony which involved preliminary discussions leading to the written agreement which was actually entered into between Traughber and the Huntsville Employment Agency. The basis of his objection was that Traughber's statement that Mrs. Snow informed him that the employment agency guaranteed him a minimum of ninety days' work[2] violated the express provisions of the contract that the agency "only handled permanent positions" and that the agency would not recognize verbal agreements between agency employees and applicants.
However, we view the testimony given by Traughber to have been for the purpose of clarifying the circumstances under which the contract was made and to explain what was meant by the contract term "permanent" employment. In other words, this testimony was not introduced to modify, vary or contradict either of the contract provisions relied upon by Walker. Instead, it was offered to show that prior to entering into the written agreement, Traughber sought to have the agency define its obligation to provide him with alternative employment should his initial assignment cease. Accordingly, Mrs. Snow informed him that the agency offered only full time employment, but if he was laid off or his job ceased within a ninety day period, the agency would guarantee him another *Page 921 
job. Since the contract which the agency furnished stated that the agency provided only "permanent positions," Mrs. Snow's efforts to explain to Traughber what was meant by this term — that is, whether the failure to obtain a "permanent position" (presumably anything over ninety days would be deemed "permanent") precluded the latter's right to receive the agency's services in seeking alternative employment — were understandable and a necessary part of the discussions which were preliminary to the contract which was actually entered into. Moreover, the above described events demonstrate the ambiguity of the term "permanent positions" in relation to the agency's obligation to find alternative positions for persons whom the agency has contracted with for its services.
Thus, the trial court properly admitted oral testimony by Traughber that an employee of the Huntsville Employment Agency told him that if he lost his job within ninety days after it was obtained for him by the agency, the agency guaranteed that it would find him another job.
This evidence merely aided the trial court and the jury in their efforts to understand the proper meaning of the term "permanent positions" as set out in the written agreement between Traughber and the employment agency. As we have stated earlier, extrinsic evidence may be admitted to explain the meaning of words contained in a written agreement. Likewise, the circumstances and preliminary discussions under which the parties contract may be admitted into evidence in order to indicate the possible meanings of contractual terms or to show the conditions which existed at the time when the writing was made. Restatement of Contracts, § 242, and comments and illustrations thereto (1932).
The second assignment of error presented on this appeal involves Walker's claim that the trial court improperly refused to permit his amended answer or grant his motion for a continuance so that he could raise certain affirmative defenses.
The facts with regard to this matter are as follows. Approximately seventy-five days after Traughber had filed his complaint initiating his action against Walker for breach of contract, Walker filed a Rule 12 (b)(6) motion to dismiss. The motion was denied on July 7, and on August 17, 1976 Walker filed the following answer: "Defendant denies each and every allegation of the Complaint and requires strict proof thereof."
Subsequent to the filing of Traughber's complaint and Walker's motion to dismiss, the trial court issued a notice to both parties stating that a pretrial conference would be held on September 22, 1976. The notice informed the attorneys that at the hearing they should be prepared to fully discuss the nature of the case, including "the theory of the parties, the admitted facts, the disputed facts, and all points of law to be determined by the Court."
The pretrial conference was actually held on September 23, 1976 and the lawyers for both parties attended. At that conference Walker's attorney again made a general denial to Traughber's complaint; however, he did not seek to amend his answer nor did he inform the court (or the opposing attorney) that he wished to raise any affirmative defenses. In fact, there was no attempt to assert an affirmative defense to Traughber's action until November 15, 1976 when the case actually came to trial.
Nonetheless, at the outset of the proceedings on that date, Walker's counsel sought to amend his answer to add the defenses of release and full performance.[3] In addition, the attorney requested that the court continue *Page 922 
the case in order to permit an amendment to the pretrial order by the court and to allow further discovery by the parties on the newly raised defenses. The lawyer who represented Traughber objected to the motion to amend and the request for a continuance which Walker's attorney had made. The court then asked the moving attorney if the document on which Walker wished to base his defenses of release and full performance had been in that attorney's possession since the lawsuit began. Walker's counsel replied that it had been in his possession since that time, whereupon the court denied his request for a continuance and refused to permit him to amend his answer to Traughber's complaint.
Rule 15 (a), ARCP, provides that after a party has amended his pleading once as a matter of course (or the time for amendments under that provision has expired), a party may amend his pleading only by obtaining leave of the court (or if the adverse party consents to it). Rule 15 further states that leave to amend "shall be freely allowed when justice so requires." However, a precise delineation of when an amendment should be allowed is not practical since the grant or denial of leave to amend is a matter that is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of that discretion. The same may also be said with regard to the granting or denying a request for a continuance. Furthermore, if the court determines, as it apparently did here, that a party has had sufficient opportunity to state a claim or revise his answer to a complaint but has failed to do so, leave to amend may properly be denied.[4] See Mooney v.Vitolo, 435 F.2d 838 (2d Cir.); Williams v. Lewis, 342 F.2d 727
(4th Cir.), cert. den. 382 U.S. 814, 86 S.Ct. 30,15 L.Ed.2d 61; Shall v. Henry, 211 F.2d 226 (7th Cir.).
Accordingly, we are not persuaded that the events which occurred in this instance demonstrate that the trial court abused its discretion in denying Walker's leave to amend or his motion for a continuance. Therefore, we find no error in the trial court's action.
The final issue presented on this appeal deals with Walker's contention that the trial court erred in failing to grant a new trial despite the fact that evidence discovered after the trial disclosed that Traughber had falsified the application he submitted to the Huntsville Employment Agency. This contention deals primarily with the fact that the application form provided by the Huntsville Employment Agency asked the following question: "Do you have a police record." Traughber answered "No" to this question when in actuality he had been convicted of the sale of marijuana sometime earlier.
We find little merit to Walker's argument. The function of a motion for new trial is to establish some error of law in the trial of the main case or to demonstrate that the moving party has some newly discovered evidence which he could not obtain for the purpose of using it in the original trial. Williams v.State, 20 Ala. App. 275, 101 So. 509. A conviction for the sale of drugs is a felony and generally is a matter of public record. Thus, we cannot say that evidence of Traughber's prior arrest and conviction was not available for presentation *Page 923 
by Walker's attorney during the actual trial of Traughber's suit for breach of contract. Moreover, the burden is on appellant (Walker) to show that the trial court's action in denying his motion for a new trial was in error. Johnson v.Hodge, 291 Ala. 142, 279 So.2d 123. From the record before us it is evident that Walker has failed to demonstrate that the action of the court in this matter was in error.
The judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.
[1] Walker urges that an examination of the contract which Traughber signed will reveal that the oral testimony presented at trial is in conflict with two provisions of the employment agreement. Those provisions are: (1) NO TRIAL JOBS. This agency only handles permanent positions. Any trial jobs must be so stated prior to acceptance in writing to the agency; (2) The agency will not recognize or honor any verbal agreements between any employee of the agency and the applicant. Any alterations or modifications of this agreement must be made in writing and countersigned by the agency office manager.
[2] Mrs. Snow testified that she told Traughber that if an applicant lost a job through no fault of his own, the agency would find the applicant another job as a courtesy.
[3] These defenses were to be based on an acceptance slip which the employment contract required Traughber to sign before reporting to his new job. (Failure to sign the acceptance slip constituted a violation of the employment agreement.) The slip signed by Traughber stated:
"ACCEPTANCE SLIP
 "I, the undersigned hereby affirm that the terms of agreement No. 393 dated Sept. 11 1975, with Huntsville Employ. have been fulfilled as I have accepted employment with Hutchens Co., date of reporting to work Sept. 17 1975, at an annual anticipated pay rate of $ 1,000.00. This the 30th day of Sept. 1975."
[4] We believe this case is distinguishable from McElrath v.Consolidated Pipe Supply Co., (Ala. 1977), 351 So.2d 560. InMcElrath our supreme court held that leave to amend pleadings should receive liberal treatment and that a court should not deny such amendments in the absence of prejudice to the opposing party or unexplained delay on the part of the moving party. However, the supreme court's decision was premised on the fact that there was no evidence that the amendments which were sought by McElrath's attorney at the beginning of (and during) the trial on Consolidated Pipe's cause of action could have been made at an earlier time. In the instant case, Walker's attorney had the document on which his affirmative defenses were based from the outset of Traughber's suit until the trial date; yet despite this fact, the lawyer who represented Walker failed to take any action to amend his answer to Traughber's complaint. Since he did not take affirmative steps to raise his affirmative defenses by amendment until the case was called for trial, the trial court was well within its discretionary power in precluding the amendments (and continuance) sought by Walker's counsel at that time.